In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-3205 & 15-1198

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LADONTA GILL and DANA BOSTIC,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 10 CR 673-7 & 10 CR 673-1 — **Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 5, 2016 — DECIDED MAY 31, 2016

Before WOOD, *Chief Judge*, and KANNE and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. Defendants-Appellants Ladonta Gill and Dana Bostic both pled guilty to participating in a heroin distribution conspiracy. Gill challenges his sentence as procedurally unsound, disputing his criminal history point assessment and supervised release conditions. Bostic challenges his sentence as procedurally unsound and substantively unreasonable. We vacate and remand Gill's sen-

tence for complete resentencing, and we affirm Bostic's sentence.

## I. BACKGROUND

Gill was a high-level member of the New Breeds street gang and associated large heroin distribution operation controlled by Bostic. *United States v. Adams*, 746 F.3d 734, 737–38 (7th Cir. 2014). The Bostic organization's daily heroin sales totaled between $4,000 and $10,000. *Id.* at 738.

The Bostic organization controlled an area "bordered by Pulaski, Van Buren, Congress, and Karlov Streets" on the west side of Chicago. *Id.* The Bostic organization maintained control over its territory through the use of guns, violence, and threats of violence. *Id.* at 748–49.

In August 2008, Bostic was shot and his brother was murdered. The Bostic organization retaliated against a rival street gang who they believed responsible. As part of the resulting violence, Gill and another Bostic organization member shot at two men, one of whom suffered gunshot wounds to his legs. Subsequently, Chicago Police Department officers arrested Gill. Gill pled guilty to aggravated unlawful use of a weapon (AUUW), in violation of 720 ILCS 5/24–1.6(a)(1), and on November 24, 2008, he was sentenced to three years' imprisonment.

The Chicago Police Department and Drug Enforcement Agency launched an investigation into the Bostic organization in the fall of 2009. The investigation included controlled heroin purchases, surveillance, interviews of informant and cooperating witnesses, court-authorized wiretaps, and seizure of over eight kilograms of heroin and numerous firearms. *Adams*, 746 F.3d at 737.

As a result of this investigation, on November 3, 2010, a federal grand jury returned a twenty-two count indictment charging Gill, Bostic, and others with various drug offenses. On December 21, 2011, Gill pled guilty to conspiracy to possess with intent to distribute and to distribute controlled substances, namely 1000 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846. Bostic pled guilty to one count of the same offense on February 22, 2012.

*A. Gill*

Gill's first sentencing occurred in July 2012. At sentencing, Gill challenged the application to his sentence of the 2-level enhancement for maintaining a drug premises, pursuant to U.S.S.G. § 2D1.1(b)(12) ("stash house enhancement"). Gill contended that application of the stash house enhancement violated the *Ex Post Facto* Clause because his offense conspiracy ended on or about August 10, 2010, but the stash house enhancement was not effective until November 1, 2010. U.S. Const. art. I, § 10. The district court expressed sympathy but found that the stash house enhancement applied under then-existing Seventh Circuit precedent.

The district court determined Gill's guideline range was 360 months to life. His criminal history category was III, based on an assessment of six criminal history points—three points for his previous AUUW conviction, one point for a juvenile drug possession conviction, and two points for being on parole at the time of commission of his AUUW offense. U.S.S.G § 4A1.1(a), (c), (d). His adjusted offense level was 40, which included a 2-level dangerous weapon enhancement and the 2-level stash house enhancement. U.S.S.G. § 2D1.1(b)(1), (12). The court also made findings of

Gill's involvement in violent activity. With the twenty-year mandatory minimum in place, the court sentenced Gill to 329 months' imprisonment and 10 years of supervised release, with standard conditions. Judgment was entered against Gill on July 9, 2012.

On July 28, 2012, Gill filed a timely notice of appeal, challenging only the district court's application of the stash house enhancement. As Gill's first appeal was pending, on June 10, 2013, the Supreme Court decided *Peugh v. United States*, 133 S. Ct. 2072 (2013), which held that the *Ex Post Facto* Clause is violated "when a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense." *Id.* at 2078.

In *Adams*, this court vacated and remanded Gill's first appeal for resentencing in light of *Peugh*. 746 F.3d at 743. Specifically, the *Adams* court remanded Gill's case "for the limited purpose of sentencing him based on the correct guideline level" but held that "[t]his limited remand does not, however, limit the district court's discretion to hold (or not hold) further proceedings and consider further arguments to determine Gill's sentence based on the § 3553 factors." *Id.* at 744–45.

On September 25, 2014, the district court held Gill's second sentencing, or resentencing, hearing. The court found that Gill had a criminal history category of III and an adjusted offense level of 36, after a 2-level reduction for removal of the stash house enhancement and a further 2-level reduction in anticipation of Amendment 782 to the sentencing guidelines, which would take effect on November 1, 2014. With

the statutory twenty-year mandatory minimum in place, the district court determined that Gill's effective guideline range was 240 to 293 months' imprisonment. The government and Gill agreed.

After hearing arguments from both sides regarding the § 3553(a) factors, the district court "re-adopt[ed]" all of its prior findings regarding Gill's involvement in violent activity. The district court then declared: "I don't think [Gill] warrants a sentence at the low end of the guideline range or close to it because of his involvement in violent activity." (Gill Sent. Tr. 22, Sep. 25, 2014).

In conclusion, the district court sentenced Gill to 280 months' imprisonment and 10 years of supervised release, with standard conditions. Judgement was entered against Gill on September 26, 2014. Gill's second appeal follows.

### B.  Bostic

In August 2012, the district court held Bostic's first sentencing hearing. Bostic challenged the application of the 2-level stash house enhancement, arguing violation of the *Ex Post Facto* Clause because his offense conspiracy ended on or about August 10, 2010, but the stash house enhancement was not effective until November 1, 2010. As with Gill, the district court expressed sympathy but found that the stash house enhancement applied under then-existing Seventh Circuit precedent.

The district court then determined that Bostic's guideline range was 360 months to life, based on a criminal history category of II and an adjusted offense level of 42, which included the 2-level stash house enhancement. The court sentenced Bostic to 456 months' imprisonment and 10 years of

supervised release, with standard conditions. The court entered judgement against him on August 13, 2012.

On August 27, 2012, Bostic filed a timely notice of appeal. In Bostic's first appeal, he raised three challenges. First, he argued that his guilty plea was not knowing and voluntary. Second, Bostic contended the district court committed procedural error when it held him responsible for some of the violence undertaken by the New Breed gang without identifying the specific violent acts. Third, Bostic claimed that application of the stash house enhancement was an *ex post facto* violation. As Bostic's first appeal was pending, the Supreme Court decided *Peugh*.

In *Adams*, this court decided Bostic's first appeal. The *Adams* court began by rejecting Bostic's first two claims, holding that Bostic's guilty plea was valid and no procedural error had occurred at his sentencing. *Adams*, 746 F.3d at 745–49. However, in light of *Peugh*, this court vacated and remanded Bostic's case for resentencing based on his third claim against application of the stash house enhancement. *Id.* at 749. As with Gill, the *Adams* court remanded Bostic's sentence for "the limited purpose of correcting the sentencing range" but "d[id] not limit the district court's discretion to hold (or not hold) further proceedings and consider further arguments based on the § 3553 factors." *Id.*

On January 14, 2015, the district court held Bostic's second sentencing, or resentencing, hearing. Consistent with the first sentencing, the court found that Bostic had a criminal history category of II and offense level of 38, after a 2-level reduction for removal of the stash house enhancement and a further 2-level reduction in anticipation of Amendment 782. With the statutory twenty-year mandatory mini-

mum in place, the district court determined that Bostic's guideline range was 262 to 327 months' imprisonment. The government and Bostic agreed.

After hearing arguments from both sides regarding the § 3553(a) factors, the district court incorporated most of its comments from Bostic's first sentencing, including those regarding Bostic's conduct and involvement in violent acts. The court then explained that at the first sentencing, it had accounted for the *ex post facto* nature of the stash house enhancement and therefore had considered Bostic to have an effective guidelines range of 324 to 405 months. The court further explicated that at the first sentencing, it had imposed a sentence of 456 months' imprisonment, an effective above-guidelines sentence, because the effective guidelines range did not capture the full range of Bostic's conduct and involvement in violent acts. Applying this same reasoning, the resentencing court imposed an above-guidelines sentence of 360 months' imprisonment because the guidelines did not capture the full range of Bostic's involvement in violent acts. The court entered judgment against Bostic on January 26, 2015. Bostic's second appeal follows here.

## II. ANALYSIS

Both Gill and Bostic challenge their respective sentences. We begin with Gill's appeal, which disputes the district court's determination of his criminal history score and imposition of conditions of supervised release. Then, we address Bostic's appeal, which challenges the procedural soundness and substantive reasonableness of his sentence.

### A. Gill

"When reviewing a criminal sentence for procedural error, we apply de novo review." *United States v. Bour*, 804 F.3d 880, 885 (7th Cir. 2015).

Gill raises two procedural challenges to his sentence. First, he argues that the district court erred in its determination of his criminal history score and category, specifically its reliance on his conviction under the Illinois AUUW statute, applicable portions of which have been found unconstitutional by this court and the Illinois Supreme Court. *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012); *People v. Burns*, 2015 IL 117387 (Ill. 2015). Second, Gill contends that the court erred in not making adequate findings when imposing conditions of supervised release, pursuant to *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015).

### 1. Waiver or Forfeiture

The government contends that Gill waived both of his claims because he did not raise them prior to this appeal. Therefore, we must determine whether Gill waived or merely forfeited his arguments below.

This court's precedent regarding the waiver or forfeiture of a criminal defendant's rights is well established. *United States v. Brodie*, 507 F.3d 527, 530 (7th Cir. 2007). "Waiver occurs when a criminal defendant intentionally relinquishes a known right. Forfeiture occurs when a defendant negligently fails to assert a right in a timely fashion. Waiver of a right extinguishes any error and precludes appellate review, whereas forfeiture of a right is reviewed for plain error." *Id.* (citations and internal quotation marks omitted).

We start our waiver-forfeiture analysis with Gill's criminal history claim and next turn to his supervised release conditions claim.

The government argues that Gill waived his right to challenge the assessment of criminal history points for the AUUW conviction. This argument fails because it is similar to the one rejected by this court in *United States v. Jenkins*, 772 F.3d 1092 (7th Cir. 2014).

In *Jenkins*, defendant Jenkins challenged the assessment of criminal history points based on an Illinois AUUW conviction, also under 720 ILCS 5/24–1.6(a)(1), which had been held facially unconstitutional at the time of his sentencing. *Jenkins*, 772 F.3d at 1096. The government in *Jenkins* argued that Jenkins had waived, rather than forfeited, his right to challenge the assessment of points for the AUUW conviction. Specifically, the government asked this court "to infer that Jenkins knew about and intentionally chose not to raise the AUUW argument, noting that Jenkins was represented by counsel, reviewed the PSR, and raised a different objection to the PSR's assessment of points." *Id.*

The *Jenkins* court rejected this argument. The court noted that without the three points attributable to the AUUW conviction, Jenkins would have been assessed a lower criminal history category, which would have "significantly" lowered his guidelines range. *Id.* The court then declared, "We can conceive of no reason why Jenkins would have intentionally relinquished an objection certain to result in a lower criminal history score and sentencing range, nor has the government offered one." *Id.* Consequently, the court held that Jenkins's failure to challenge the points assessment resulted from "an oversight by defense counsel and was therefore accidental

rather than deliberate. This is the hallmark of forfeiture, which is the failure to timely assert a right." *Id.* (citations and internal quotation marks omitted).

*Jenkins* controls this part of Gill's case; the facts are virtually indistinguishable. In the present case, in arguing waiver, the government is asking us to infer that Gill "knew about and intentionally chose not to raise the AUUW argument," the very contention we rejected in *Jenkins*. *Id.* Additionally, like in *Jenkins*, without the points attributable to the AUUW conviction, Gill would have been assessed a lower criminal history category, which would have significantly lowered his guidelines range.[1] Therefore, Gill forfeited, rather than waived, his criminal history assessment claim.

The government attempts to distinguish *Jenkins* by arguing that Gill's criminal history claim exceeds *Adams*'s limited remand and that Gill "should not be able to use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal." (Appellee Br. 14.)

---

[1] At resentencing, the district court adopted the PSR, which assessed Gill a criminal history category of III, based on six criminal history points: three points for his previous AUUW conviction, one point for a juvenile drug possession conviction, and two points for being on parole at the time of commission of his AUUW offense. Removing the three points for his AUUW conviction would leave Gill with a criminal history category of II, based on three criminal history points. Further removing the two points for being on parole during commission of his AUUW offense would leave Gill with a criminal history category of I, based on one criminal history point. Thus, without his AUUW conviction, Gill would have been assessed a lower criminal history score and category.

This is a distinction without a difference. In *Adams*, this court stated: "While we call this a limited remand, the remand is still very broad. But a court may fashion a limited remand as narrowly or broadly as it deems appropriate." 746 F.3d at 745. In other words, while we provided guidance in the form of a limited remand, it was not meant to infringe upon the district court's properly exercised discretion. In fact, there is no dispute, by either party, regarding the district court's adjustment of Gill's guideline range in anticipation of Amendment 782. Just as that adjustment was not precluded by *Adams*'s limited remand, neither is Gill's criminal history score challenge.

*Jenkins* itself provides further guidance. In determining that Jenkins only forfeited his argument, the *Jenkins* court underscored:

> Indeed, not only did defense counsel overlook the error, but the Assistant United States Attorney and Probation did so as well. As a result, the error was not brought to the attention of the district court. As we have previously noted, it would be unjust to place the entire burden for these oversights on [the defendant].

*Jenkins*, 772 F.3d at 1096–97 (alteration in original and internal quotation marks omitted). In the case at hand, defense counsel, the government, and probation all overlooked the error in Gill's criminal history score. Indeed, the only notable distinction between *Jenkins* and Gill's case is that here, these oversights occurred twice.

We now turn to Gill's supervised release conditions challenge and find that he forfeited, rather than waived, this claim. This court recently held that "the imposition of waiver

is inappropriate in light of developments in the law since [the defendant's] first appeal," in response to a defendant's challenge, on a second appeal, to standard conditions of supervised release imposed prior to *Thompson*. *United States v. Poulin*, 809 F.3d 924, 930–31 (7th Cir. 2016) (citing *Thompson*, 777 F.3d at 368). Here, Gill's first appeal and resentencing preceded *Thompson* and therefore waiver is inappropriate.

In conclusion, we reiterate that this court has "consistently held that waiver principles should be construed liberally in favor of the defendant." *Jenkins*, 772 F.3d at 1096 (collecting cases). Accordingly, Gill merely forfeited his claims and plain-error review applies.

### 2. *Criminal History Point Assessment*

"Under the plain error standard, we will reverse the district court's sentencing determination only when we find: (1) an error or defect (2) that is clear or obvious (3) affecting the defendant's substantial rights (4) and seriously impugning the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1096 (internal quotation marks omitted).

*Jenkins* also controls the plain error analysis of Gill's criminal history claim. In *Jenkins*, we determined plain error had occurred because "under Application Note 6 to Section 4A1.2, the trial court erred when it assigned three criminal history points as arising from [the defendant's] previously invalidated AUUW conviction." *Id.* at 1098.

Here, we apply the same analysis as the *Jenkins* court, *id.* at 1097–99, and conclude that the district court committed plain error with regard to Gill's criminal history score.

This court has "repeatedly held that 'a sentencing based on an incorrect Guidelines range constitutes plain error and

warrants a remand for resentencing, unless we have reason to believe that the error in no way affected the district court's selection of a particular sentence.'" *Id.* at 1097 (quoting *United States v. Love*, 706 F.3d 832, 841 (7th Cir. 2013)).

Under the sentencing guidelines, Gill was assessed five points for his AUUW conviction—three points for the actual conviction and two additional points for being on parole at the time of the commission of his AUUW offense. U.S.S.G. § 4A1.1(a), (d).

But, an exception to this rule appears in U.S.S.G. § 4A1.2 n.6:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently-discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted.

This court has read Subsection (B) to contain two requirements: "(i) the sentence resulted from a conviction that was ruled constitutionally invalid; and (ii) that ruling occurred in a prior case." *Jenkins*, 772 F.3d at 1097.

Gill meets the first requirement because both this court and the Supreme Court of Illinois have held the applicable portion of the AUUW statute to be constitutionally invalid. *See id.* at 1097.

In December 2012, in response to a facial challenge, this court in *Moore* held that provisions of the Illinois AUUW statute, notably the "flat ban on carrying ready-to-use guns outside the home," violated the Second Amendment. 702 F.3d at 940, 942. In September 2013, in *Aguilar*, the Supreme

Court of Illinois held that applicable portions of the AUUW statute were facially unconstitutional, but limited its holding to the "Class 4" form of the offense. 2 N.E.3d at 327–28. Recently, in *Burns*, the Supreme Court of Illinois "clarif[ied]" *Aguilar* and held that the "[AUUW] statute is facially unconstitutional, without limitation." 2015 IL 117387 at *6.

In Illinois, when a statute is held to be facially unconstitutional, it renders a defendant's conviction void because "'the statute under which [the defendant] was charged and prosecuted *was not in effect* when the alleged offenses occurred.'" *Jenkins*, 772 F.3d at 1097–98 (citing *People v. Tellez–Valencia*, 723 N.E.2d 223, 225 (Ill. 1999)) (alteration in original). Therefore, in light of *Moore* and *Burns*, Gill has met the first requirement of Subsection (B).

The government seeks to distinguish Gill's alleged "Class 2 form" AUUW conviction from *Jenkins* and *Aguilar*, both of which concerned a "Class 4 felony" AUUW conviction.[2] The government's argument fails. In clarifying *Aguilar*, the *Burns* court explicitly declared that "[t]here is no 'Class 4 form' or 'Class 2 form' of aggravated unlawful use of a weapon," and it ultimately held that the AUUW was statute "facially unconstitutional, without limitation." 2015 IL 117387 at *4, *6.

Gill also fulfills the second requirement of Subsection (B) because his sentence was ruled constitutionally invalid "in a prior case." Gill was resentenced after both *Moore* and *Agui-*

---

[2] The record does not clearly state whether Gill's AUUW conviction was a "Class 2 felony" or "Class 4 felony." However, the PSR description of his conviction—"Aggravated Unlawful Use of a Weapon in A Vehicle With A Previous Conviction"— suggests a "Class 2 felony" via 720 ILCS 5/24–1.6(d)(3).

*lar* were decided: *Moore* predated Gill's sentencing by twenty-one months and *Aguilar* by nine months. *See Jenkins*, 772 F.3d at 1098 (determining that the defendant met the second requirement of Subsection (B) because *Moore* and *Aguilar* predated his sentencing).

We conclude that, pursuant to U.S.S.G. § 4A1.2 n.6, the district court erred when it assigned five criminal history points based on Gill's previously invalidated AUUW conviction. And this court has held that "[a] district court's adoption of erroneous information in a PSR that results in an incorrect Guidelines range, however correct such information appears, constitutes plain error on review." *Jenkins*, 772 F.3d at 1098 (collecting cases). Thus, the district court committed plain error in its assessment of Gill's criminal history.

### 3. *Supervised Release Conditions*

We now turn to Gill's challenge to his supervised release conditions.

This court's recent jurisprudence holds that a sentencing court must make adequate findings regarding the conditions of supervised release. *See e.g.*, *Thompson*, 777 F.3d 368; *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015); *United States v. Armour*, 804 F.3d 859 (7th Cir. 2015). Here, the district court did not do so, though we recognize that it did not have the benefit of guidance provided by *Thompson* and its progeny.

Consequently, we agree with the government and Gill that Gill's sentence should be vacated and remanded to allow the district court to make adequate findings with regards to the supervised release conditions. (Appellant Gill Br. 17–21; Appellee Br. 15–16.)

We conclude Gill's case with a brief note on the scope of the remand. Because "there might properly be an interplay between prison time and the term and conditions of supervised release," this court has held that the appropriate relief for error in the conditions of supervised release is complete resentencing. *Kappes*, 782 F.3d at 867. Therefore, we vacate Gill's entire sentence and remand for complete resentencing, consistent with our foregoing reasons.

### B. *Bostic*

Bostic challenges the procedural soundness and substantive reasonableness of his sentence. However, Bostic's specific claims are confusing. It appears that he is arguing that the district court erred, either procedurally or substantively or both, in Bostic's first sentencing by failing to account for the *ex post facto* nature of the stash house enhancement and not alerting him to the fact that it was imposing an effective above-guidelines sentence. Although Bostic's first sentence was vacated, we address his claims because they pertain to determinations made by the first sentencing court that were discussed and incorporated at resentencing.

"We review a district court's choice of sentence in two steps. First, we assess *de novo* whether the court followed proper procedures. If the decision below is procedurally sound, then we ask whether the resulting sentence is substantively reasonable." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) (citations omitted); *see also United States v. Gall,* 552 U.S. 38, 51 (2008).

### 1. *Procedural Error*

Procedurally, we ask district courts to do the following at sentencing: "(1) calculate the applicable Guidelines range; (2)

give the defendant an opportunity to identify any of the 18 U.S.C. § 3553(a) factors that might warrant a non-Guidelines sentence; and (3) state which factors influenced the final sentence." *United States v. Abebe*, 651 F.3d 653, 656 (7th Cir. 2011) (internal quotation marks omitted). In other words, "[a]s a general matter, the record must merely assure us that the court thoughtfully considered the statutory provisions." *United States v. Nania*, 724 F.3d 824, 838 (7th Cir. 2013).

In the present case, at resentencing, the district court met its procedural requirements. As an initial matter, there is no dispute regarding the first two procedural requirements—the district court correctly calculated the guidelines range and gave Bostic ample opportunity to raise arguments under the § 3553(a) factors. (Bostic Sent. Tr. 3–4, 10–25, 27–29, Jan. 14, 2015.)

Bostic's challenge, as we understand it, pertains only to the third procedural requirement—that the district court did not state which factors influenced the final sentence. We find Bostic's challenge to be without merit.

At both Bostic's first sentencing and resentencing, the district court stated which factors influenced the final sentence. At Bostic's first sentencing, the district court met its procedural requirements, leading the *Adams* court to reject Bostic's procedural challenge in his first appeal. *Adams*, 746 F.3d at 747–49. At resentencing, the district court incorporated many of its comments from the first sentencing, including the following: Bostic committed a narcotics offense, he was involved in an organization that used violence to accomplish its goals, he was the leader of a drug organization that was associated with or part of a street gang, he had a disadvantaged upbringing, the full scope of his conduct was

not captured by the sentencing guideline range, and his criminal history category of II was appropriate. (Bostic Sent. Tr. 29–33, Jan. 14, 2015.) Then, the resentencing court explicitly explained that, at the first sentencing, it had *already* accounted for the *ex post facto* nature of the stash house enhancement, which resulted in an effective guideline range of 324 to 405 months and an effective above-guidelines sentence of 456 months:

> And so in terms of the guideline calculation, that's different because the stash house guideline enhancement no longer applies to Mr. Bostic. That said … I took that into account before. I made a comment about that at sentencing … What I said was: I'm applying it. I reject the ex post facto argument, but 3553(a) entitles me and it requires me to consider whether a sentence is just. And I thought it was unjust or retroactively applies something, and so I did not apply that guideline enhancement in the actual sentence. I said that I was considering it as a 3553(a) factor, and that's what I meant.

> So effectively, though Mr. Bostic's … criminal history category 2 and previously [*sic*] offense level of 42 gave him a range, advisory range, of 360 months to life, and I made some comments about where I was sentencing him within that range, which I will come back to, effectively I was considering him somebody who had an effective sentencing guideline range of 324 to 405 months. When I made the comment at the end of the sentencing, on page 302 after I went through all the considerations, I said: "The sentencing I'm imposing is a sentence of 38 years. That translates to – I'm going to do the math

> again – 456 months. It's all on Count 1. That's in the middle of the guideline range, I guess."
>
> I said that as an observation, not because I thought that I was sentencing him in the middle of the effective guideline range because I wasn't. I was effectively sentencing Mr. Bostic above what I considered to be the effective guideline range of 324 to 405 months. I gave him a sentence that was 51 months higher than that. And the reason I did that was all of the other stuff that I discussed at the sentencing; namely, the fact that his guideline range didn't capture the full range of his conduct, this issue about violence, his direct participation and the attribution of other things to him to the extent I concluded that that happened.
>
> So the stash house thing is what gets us back here. It's a change in terms of the guideline calculation. It's really not a change in terms of the sentence that I imposed.

*Id.* at 33–34. After expounding on its reasoning in imposing an effective above-guidelines range sentence at the first sentencing, the district court then utilized a similar reasoning to impose an actual above-guidelines range sentence of 360 months' imprisonment at resentencing:

> [W]hat I effectively did before was I effectively considered Mr. Bostic as somebody who had an advisory range of 324 to 405 months, and I essentially sentenced him about 51–exactly 51 months above the top end of the range, about one-eighth above the top end of the range. In other words, 50 is one-eighth of 405.

> I think the appropriate sentence now is 360 months, which is essentially proportionately the same, roughly the same, amount of increase over the top end of the actual guideline range now.

*Id.* at 36. This extensive and detailed discussion at resentencing more than demonstrates that the district court "state[d] which factors influenced the final sentence." *Abebe*, 651 F.3d at 656 (internal quotation marks omitted).

Therefore, we find no procedural error.

2. *Substantive Reasonableness*

In reviewing for substantive reasonableness under an abuse of discretion standard, this court "will uphold an above-guidelines sentence so long as the district court offered an adequate statement of its reasons, consistent with 18 U.S.C. § 3553(a), for imposing such a sentence." *Abebe*, 651 F.3d at 657 (internal quotation marks omitted).

"There is no presumption that a sentence outside the guidelines' range is unreasonable. The fact that we might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* (citations and internal quotation marks omitted). This court's review "must take into account that a sentencing judge is in a superior position to find facts and judge their import under [section] 3553(a) in the individual case." *Id.* (internal quotation marks omitted) (alteration in original). As such, this court "must defer, absent an abuse of discretion, to [the district court's] ruling." *Id.* (internal quotation marks omitted).

Here, the district court provided an adequate statement of its reasons for imposing such a sentence, consistent with 18 U.S.C. § 3553(a).

As discussed, the district court at resentencing explained, in detail, its reasons for imposing an above-guidelines sentence. The district court incorporated many of its comments from the first sentencing, including those relating to Bostic's conduct and involvement in violent acts. The district court then explained that at the first sentencing, it had accounted for the *ex post facto* nature of the stash house enhancement and therefore had considered Bostic to have an effective guidelines range of 324 to 405 months. The district court further explicated that at the first sentencing, it had imposed a sentence of 456 months' imprisonment, an effective above-guidelines sentence, because the effective guidelines range did not capture the full range of Bostic's conduct and involvement in violent acts. Finally, in resentencing Bostic, the district court applied the same reasoning it used at the first sentencing—imposing a sentence of 360 months' imprisonment, an actual above-guidelines sentence, because the actual guidelines range did not capture the full range of Bostic's conduct and participation in violent activity. This discussion is more than sufficient to demonstrate the district court did not abuse its discretion in imposing an above-guidelines sentence at resentencing.

Bostic argues that the first sentencing court erred because it did not account for the *ex post facto* nature of the stash house enhancement. This argument makes no sense. At resentencing, the district court unambiguously declared that it had already accounted for the *ex post facto* nature of the stash house enhancement at the first sentencing: "I thought it was

unjust or retroactively applies something, and so I did not apply that [stash house] guideline enhancement in the actual sentence. I said that I was considering it as a 3553(a) factor, and that's what I meant." (Bostic Sent. Tr. 29, 33, Jan. 14, 2015.)

Bostic also contends that the first sentencing court erred because it did not alert him that it was imposing an effective above-guidelines sentence. Specifically, he asserts that his first sentence was based on the district court's "unspoken private beliefs" because the first sentencing court had described Bostic's first sentence as "in the middle of the guideline range," undercutting the resentencing court's claim of imposing an effective above-guidelines sentence. (Bostic Sent. Tr. 68, Aug. 3, 2012.) This argument is without merit. At resentencing, the district court explicitly rejected the claim that there was any meaning to its prior observation: "I said that as an observation, not because I thought that I was sentencing him in the middle of the effective guideline range because I wasn't. I was effectively sentencing Mr. Bostic above what I considered to be the effective guideline range of 324 to 405 months." (Bostic Sent. Tr. 34, Jan. 14, 2015.)

Accordingly, the district court did not abuse its discretion in imposing an above-guidelines sentence.

### III. CONCLUSION

For the foregoing reasons, Gill's sentence is VACATED and REMANDED to the district court for complete resentencing,[3] and Bostic's sentence is AFFIRMED.[4]

---

[3] For Gill's case, we note a clerical error in the record. As part of the remand, we direct the district court to amend the written judgment and commitment orders to reflect that the offense was 21 U.S.C. §§ 841(a)(1),

846, to match the indictment and oral pronouncement of the district court. Fed. R. Crim. P. 36.

[4] For Bostic's case, we note a clerical error in the record. We order the clerk of the district court to amend the written judgment and commitment orders to reflect that the offense was 21 U.S.C. §§ 841(a)(1), 846, to match the indictment and oral pronouncement of the district court. Fed. R. Crim. P. 36; *United States v. Anobah*, 734 F.3d 733, 739–40 (7th Cir. 2013) ("Rule 36 is equally available to the court of appeals and the district court."). This modification does not affect our ruling.