In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1595

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

KEVIN A. HOFFMAN, also known
as KEVIN HOFFMAN,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 13-cr-00134 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED NOVEMBER 10, 2016 — DECIDED FEBRUARY 8, 2017

Before RIPPLE, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* For conduct arising out of one day's
sexual abuse, Kevin Hoffman was convicted after a two-day
federal jury trial of one count of exploitation of a child and
one count of possession of child pornography in interstate
commerce, and faced a sentence of up to thirty years in prison.
While his sentence was pending, he was convicted in state

court of sexual abuse of the same child over a period of eighteen months, and faced a sentence of up to fifty years in state prison. This case involves the discretion of a federal district court judge under U.S.S.G. § 5G1.3 to impose a concurrent or consecutive sentence, or to decline to impose either, when a subsequent state sentence for relevant conduct is anticipated. Hoffman argues that the plain language of the Sentencing Guidelines *requires* a district judge to impose a concurrent sentence in such a situation. Because the Guidelines are advisory, and because U.S.S.G. § 5G1.3 is inapplicable in this case, we affirm the decision below.

## I.  Background

Hoffman's federal conviction arises out of events occurring on one day, September 5, 2013. On that day, Hoffman was at home in Michigan City, Indiana. He lived there with his girlfriend, Shannon, her sister-in-law, Nina, and Nina's two young sons. Shannon had two daughters who also lived in the house: Hannah, 18, and the victim, Jane Doe, 6. Finally, the primary witness, Ashley Randle-El, 23, was a friend of Hannah's and also lived in the house.

On September 5, 2013, Hoffman and Randle-El were caring for Jane Doe and Nina's two young sons. All five went to the back yard patio at some point during the day. Later, Hoffman and Jane Doe went inside. Shortly thereafter, Randle-El and Nina's two boys returned to the house, and Randle-El witnessed Jane Doe return from Hoffman's bedroom to the kitchen. Randle-El walked to the bedroom and asked Hoffman to borrow his cell phone, which he gave to her. She returned to the kitchen in order to place a call.

When she opened the phone, she saw a photograph of Jane Doe, nude, in what the District Court characterized as a "blatantly sexual pose." Screaming, Randle-El asked Jane Doe: "What's going on?" Jane Doe replied: "My dad took the x-rays," and Jane Doe ran back towards the bedroom. Hoffman came out, seized the phone, and deleted the photographs. Randle-El took the children outside, and when Jane Doe's mother, Hoffman's girlfriend Shannon, returned home, they found no photos, and notified police. Pursuant to a search warrant, Michigan City police seized Hoffman's cell phone and a forensic analyst discovered ten deleted images of Jane Doe naked in various postures. Hoffman was arrested on November 26, 2013, and he has remained in custody since. A grand jury returned an indictment against Hoffman on December 11, 2013, on one count of violating 18 U.S.C. § 2251(a), sexual exploitation of a child, and one count of violating 18 U.S.C. § 2252(a)(4)(B), possession of child pornography in interstate commerce.

As noted by the district court and affirmed by the government at oral argument, the case was tried "as a child pornography case" related to the events of September 5, 2013. However, during the course of the trial the jury did hear testimony from Jane Doe which related to her grooming and abuse by Hoffman over a period of time. Specifically, Jane Doe related that she and Hoffman had "practice[d] having sex … lots, multiple times." Further, she testified that Hoffman's hands would shake and that he told her he was a diabetic and would die without oral sex, which she would then perform on him. This abuse, however, was not what Hoffman was charged with: he was charged with, and convicted of, one count of sexual exploitation of a child and one child pornography count, both related to the events of September 5, 2013.

Following Hoffman's first sentencing hearing, the district court on January 5, 2015, increased Hoffman's base offense level pursuant to U.S.S.G. § 2G2.1 (sexual exploitation of a minor) and U.S.S.G. § 4B1.5(b) (repeat and dangerous sex offender against minors). The maximum allowable sentence under the statutes was 30 years, or 360 months. This fell below the advisory guideline range of life. Therefore, the advisory range was limited to 360 months. The government agreed that 360 months was reasonable. Hoffman's attorneys, for their part, recommended 17 years, which was 2 years above the statutory minimum of 15 years. After applying the various factors set out in 18 U.S.C. § 3553, the district judge sentenced Hoffman to a term of 300 months' imprisonment, and ten years of supervised release, with various conditions upon that release. He noted that the single count of production of child pornography would carry with it a minimum mandatory sentence of 15 years, so that the other aspects of the case demanded more than simply the two years requested by defense counsel. Accordingly, he imposed a 25-year sentence on Hoffman solely for the production count, merging the possession count with it.

Following his first sentencing, Hoffman filed a notice of appeal. During the pendency of that appeal, this court decided both *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015), and *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015), which bore on the validity of several conditions of supervised release imposed on Hoffman at his initial sentencing. As a result, on October 7, 2015, the parties filed a joint motion to remand for full resentencing, which this court granted the next day. Hoffman was resentenced in district court on March 14, 2016, again for 25 years, in the order now on appeal before this court.

Also during the pendency of Hoffman's appeal from his first sentencing, parallel proceedings in state court were developing related to his 18-month period of abusing Jane Doe. Shortly before his federal resentencing, an Indiana jury convicted Hoffman of child molestation, a charge for which he faced a sentencing range of 20 to 50 years. Facing this additional sentence, Hoffman argued at resentencing in the federal case that because his sentence was enhanced under U.S.S.G. § 4B1.5(b)(1), for "engage[ing] in a pattern of activity involving prohibited sexual conduct," he was entitled to a concurrent sentence under U.S.S.G. § 5G1.3(c). That section provides:

> If subsection (a) [the crime was committed while incarcerated] does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

After considering the arguments, the district court declined to apply § 5G1.3(c). Its reasoning was three-fold. First, it noted that under *United States v. Moore*, 784 F.3d 398 (7th Cir. 2015), section § 5G1.3(c) is advisory, rather than mandatory, rejecting Hoffman's argument that the district court was compelled to sentence concurrently. *See also United States v. Booker*, 543 U.S. 220 (2005). Second, it rejected, "though somewhat tentatively," Hoffman's argument that his sentencing enhancement under U.S.S.G. § 4B1.5 was the requisite "relevant conduct" under § 5G1.3(c). The court instead held that

§ 5G1.3(c) simply did not apply to any Chapter Four enhancements, such as § 4B1.5. Finally, the district court noted that even if § 5G1.3(c) applied, it would have sentenced Hoffman consecutively, citing this court's decision in *United States v. Hawkins*, 777 F.3d 880, 885 (7th Cir. 2015) ("We have encouraged district judges to bypass debatable issues in the calculation of Guideline ranges if the issues turn out not to matter, and to state on the record whether the sentence would have been the same if the debated issue had come out the other way.").

Specifically, it noted that the state court might have additional information that the federal court did not have, so that the state court would be in a better position to determine an appropriate sentence for Hoffman. Rather than imposing a consecutive sentence, however, the district judge simply declined to rule, noting that "[t]his court would have no objection to the state and federal sentences running concurrently." It is this decision that is before us on appeal.

One last event bears mentioning. On May 12, 2016, Hoffman was sentenced in Indiana state court to the statutory maximum, 50 years, and the sentence was imposed consecutively. As aggravating factors, the state court cited:

> the victim's young age, Hoffman's role as a father figure, his high risk to re-offend, his lack of remorse and denial of responsibility despite the evidence and his prior criminal history---which includes having raped a child at knifepoint when he was 12 and having raped a relative when he was 15.

The state court cited no mitigating factors.

## II. ANALYSIS

We review district court interpretations of the Sentencing Guidelines *de novo*, and factual determinations underlying the application of the Guidelines for clear error. *United States v. Grzegorczyk*, 800 F.3d 402, 405 (7th Cir. 2015).

On appeal, Hoffman asks us to vacate his sentence and remand for resentencing, arguing that it was an abuse of discretion for the district court judge to decline to impose the sentence concurrent to the pending state sentence, as he argues is mandatory under § 5G1.3(c). On the one hand, Hoffman cites *Setser v. United States*, 132 S. Ct. 1463 (2012), for the proposition that a district court has discretion to order a federal sentence to run concurrently or consecutively to an anticipated state sentence. This is certainly true, and the district court agreed.

On the other hand, Hoffman seems to believe that *because* the Guidelines are advisory, the district court committed error when it noted that "The court doesn't have the authority to do what Mr. Hoffman asks." We do not take this stray comment to mean that the district court judge was unaware that the Guidelines are advisory. Indeed, the district court's very next sentence explicitly notes that the Guidelines are indeed advisory. Rather, the district court was signaling that it could not apply § 5G1.3(c) in Hoffman's case because his sentencing enhancements were simply not for "relevant conduct" that would trigger that section. Thus, the legal question before us is whether the district court erred in declining to apply § 5G1.3(c) to Hoffman's sentence. Today, we hold that it did not err.

The text of § 5G1.3(c) is straightforward, as is its purpose. When sentencing a federal defendant for certain criminal conduct, a district judge should take note of anticipated state terms of imprisonment for relevant conduct, and, where appropriate, impose a concurrent sentence, in order to avoid an unduly harsh sentence unwittingly. What constitutes "relevant conduct" is explicitly laid out in the section: "provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3."

This exhaustive list of "relevant conduct" under § 5G1.3(c) relates back to a single subsection, U.S.S.G. § 1B1.3(a): relevant conduct under Chapters Two and Three. Thus, under § 5G1.3(c), the federal district judge is instructed to consider anticipated state terms of imprisonment where that term of state imprisonment is relevant conduct to a Chapter Two or Three enhancement. As noted in the district court's decision before us, Hoffman's Chapter Four enhancement, U.S.S.G. § 4B1.5(b)(1), simply does not fall under § 5G1.3(c).

While it is true that Hoffman's sentence was enhanced under a few Chapter Two enhancements—specifically, § 2G2.1(b)(1)(A), § 2G2.1(2)(A), and §2G2.1(5)—Hoffman did not argue before the district court that these sentencing enhancements triggered § 5G1.3(c). As a result, we consider this argument waived, and will review it only for plain error. However, we need not fully consider whether § 5G1.3(c) was triggered by the Chapter Two sentencing enhancements applied to Hoffman, because any hypothetical error by the district judge was harmless. *United States v. Olano*, 507 U.S. 725, 732 (1993).

As detailed in the district court opinion below, even had § 5G1.3(c) been applicable, the district judge still would have declined to impose a concurrent sentence. With due care for

both the rights of the accused and for our federal system, the judge noted that "this court can't be so presumptuous as to claim certainty of the information that will be available to the state court in the event of a conviction."[1] Rather than imposing a concurrent sentence and thus limiting the sentencing options of the state judge, the federal district judge merely deferred. Such deferral was entirely appropriate, and to be encouraged, when the district judge has reason to believe that a state judge might have additional facts before it relevant to sentencing.

As tried in federal court, the jury did hear some testimony of Jane Doe related to her long-term abuse at the hands of Hoffman, but this testimony was limited because the charges were related to a single day's conduct. The district court observed that the potentially more expansive state criminal trial might unveil additional factors, both aggravating and mitigating, that could serve to place the state judge in a better position than the federal judge to determine whether a concurrent or consecutive sentence was warranted. As it turns out, the state judge *did* preside over a more expansive prosecution covering not one day, but *18 months* of repeated abuse of a 6-year old girl at the hands of a man who was supposed to be caring for her. The state court found several aggravating factors, no mitigating factors, imposed the statutory maximum

---

[1] Certainly, in *Setser v. United States*, Justice Scalia, writing for the majority, notes that "it is always more respectful of the State's sovereignty for the district court to make its decision up front rather than for the Bureau of Prisons to make the decision after the state court has acted." 566 U.S. 231, 241 (2012). But this holds when all the facts are known and the district judge is unsure about what actual time might be served in an anticipated state sentence. It does not hold when what the district judge is unsure about is equitable factors due to a narrow federal prosecution.

sentence, and imposed that sentence consecutively. The instincts of the federal judge in this case about the need to defer were entirely appropriate.

To find the district court order in error, vacate it, and remand for a third resentencing could thus place Hoffman in no better position than he is now. As the district judge indicated, even applying § 5G1.3(c) he would still decline to impose a concurrent sentence, so that any hypothetical error clearly did not affect the district court's decision. *United States v. Gill*, 824 F.3d 653, 662 (7th Cir. 2016).

The decision of the district court is thus AFFIRMED.