In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2263

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ULISES DE LA CRUZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16 CR 462-4 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED FEBRUARY 23, 2018 — DECIDED JULY 30, 2018

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* From the time he was a young
adolescent, defendant Ulises De La Cruz was a member of the
Latin Kings gang. De La Cruz was one of many Latin Kings
swept up in a federal prosecution charging the gang with op-
erating a racketeering conspiracy in the Chicago area. He
pleaded guilty to the conspiracy charge and argued at sen-
tencing that the district judge should reduce his sentence by
the amount of time he had already served in prison on charges

related to conduct that was part of the ongoing racketeering conspiracy. He was partially successful. The district judge, in recognition of a prison sentence De La Cruz was still serving, imposed a 210-month sentence. That term was the bottom of the range recommended by the U.S. Sentencing Guidelines. De La Cruz appeals this sentence. He contends that the Guidelines entitle him to a greater reduction due to another prior prison sentence he served in full. His argument misreads the discretionary nature of the Guidelines relating to downward departures for discharged prison sentences. The district judge did not abuse that discretion, so we affirm.

In January 2016, a grand jury indicted De La Cruz and fourteen other members of the Latin Kings for participating in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). De La Cruz pleaded guilty to the racketeering charge, preserving his right to appeal the sentence. At no time did he dispute the factual allegations in the presentence investigation report prepared by the U.S. Probation Office. That report provides the facts summarized below that detail his role in the Latin Kings and the many factors relevant to his sentence.

De La Cruz joined the Latin Kings in 1999 when he was not yet a teenager. He rose through the ranks of the Maywood, Illinois section of the gang, becoming the Chief Enforcer of that unit by 2008 and eventually its second in command, or Cacique. In this leadership role, De La Cruz inflicted physical punishment on members of the gang who violated its rules and the orders of its leadership. For example, on one occasion in 2013, De La Cruz participated in a meeting where his section beat a member for accusing another member of cooperating with law enforcement without sufficient evidence. The

beating victim suffered severe injuries that required medical care. At that same meeting, De La Cruz ordered others to shoot rival gang members and former Latin Kings, threatening beatings if they failed to comply.

During his time as a Latin King, De La Cruz racked up ten convictions and more arrests for a variety of offenses. His convictions ranged from criminal damage to property and cannabis possession to aggravated unlawful use of a weapon and aggravated discharge of a firearm. Several of these convictions might count as part of the underlying racketeering conduct, but because De La Cruz was convicted of these offenses "prior to the last overt act" in furtherance of the racketeering conspiracy, the Guidelines treat these offenses as part of the defendant's criminal history. See U.S.S.G. § 2E1.1 cmt. 4. Only the two weapons offenses from 2008 and 2014 are relevant to this appeal.

In November 2008, police responded to a report of shots fired. Officers saw De La Cruz toss a semi-automatic handgun out of a vehicle that fled the scene. De La Cruz was convicted of violating an Illinois statute for the aggravated unlawful use of a weapon and sentenced to two years in prison. He served his prison sentence and, with credit for good behavior in prison, was released on parole in July 2009. The case was closed the following year.[1]

---

[1] After De La Cruz's case was closed, this court and the Illinois Supreme Court invalidated that statute as contrary to the Second Amendment. See *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), *rehearing en banc denied*, 708 F.3d 901 (7th Cir. 2013); *People v. Aguilar*, 2 N.E.3d 321, 328 (Ill. 2013). Because of the statute's invalidation, De La Cruz received no criminal history points for this conviction in his federal sentencing for the racketeering conspiracy.

In March 2014, De La Cruz fired two shots into a second-floor window of a rival gang member's residence and four shots into a car outside the residence. He was arrested, incarcerated, and convicted of aggravated discharge of a firearm. The state court sentenced him to five years in prison for the offense. From the time of his indictment in this federal case through his federal sentencing, De La Cruz remained in prison for the 2014 offense. The probation officer believed that this offense was likely part of the underlying racketeering activity. Because telephone recordings showed that De La Cruz continued to act in furtherance of the conspiracy while in prison on this charge, the probation officer counted this offense toward his criminal history score and not toward the score for his underlying offense in accordance with the Guidelines. See U.S.S.G. § 2E1.1 cmt. 4.

Several recorded statements supported the conclusion that De La Cruz continued to participate in the conspiracy. For example, in December 2014, he told another gang member while in jail that he "put his freedom off" for the gang and was "in it for the long run." In January 2015, he said that once released from jail, he would be "right back like I never left." More ominously, De La Cruz responded to news that his fellow members had shot and severely injured a former member by expressing approval. He said that if the victim wound up in jail, that would be "the worst thing for him." On another occasion, he said that if allegations that some Latin Kings in custody were cooperating with law enforcement were true, he would have those persons attacked or killed.

At sentencing, De La Cruz argued that he should receive credit for time served in Illinois prisons for crimes he committed in furtherance of the Latin Kings criminal conspiracy. The

main justification for his proposed adjustment centered on the inequity of De La Cruz serving more time than his codefendants in the case who previously escaped prison terms, despite ongoing participation in the scheme. After all, De La Cruz claimed, he was already serving time in Illinois prison for a charge related to the federal conspiracy when he was indicted in this federal case.

The U.S. Probation Office calculated De La Cruz's sentencing range as 210 to 240 months using the 2016 Guidelines Manual. The district judge said that she was "sensitive to the fact that" De La Cruz "has already served significant time on another offense in state court." To account for this fact and to avoid the "need to subtract or add anything to make this [sentence] work," the judge imposed a sentence at the bottom of the guideline range, 210 months, and ordered that it be served concurrently with the remainder of De La Cruz's state sentence.

On appeal, De La Cruz argues that the district judge committed procedural error by failing to give him more credit toward his federal sentence for time served in state prison for offenses that formed part of the underlying racketeering activity. We review *de novo* claims of procedural errors in sentencing, such as a district court's interpretations of the Guidelines. *United States v. Hoffman*, 847 F.3d 878, 881 (7th Cir. 2017). We review the district court's substantive sentencing determinations for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). De La Cruz's arguments on appeal focus largely on specific Guidelines that are explicitly discretionary, so we consider whether the district judge abused that discretion.

The Guidelines provide detailed and complex directions for determining their advice. The Guidelines also include application notes that attempt to remove ambiguity or confusion that might arise in applying a specific guideline to the facts in a specific case. The 2016 Guidelines devote 572 pages to this goal, not counting appendices and introductory materials. Despite these painstaking efforts to promote more uniform sentencing by guiding sentencing judges' discretion, some Guidelines and application notes recognize that particular cases require judges to just use their—wait for it!—judgment. Cf. Kate Stith and Jose A. Cabranes, Fear of Judging (1998) (criticizing mandatory federal Sentencing Guidelines for often preventing exercise of judgment in sentencing).

Racketeering offenses such as De La Cruz's are complicated and trigger these highly discretionary Guidelines. Racketeering conspiracies involve long-term, ongoing criminal enterprises in which individual conspirators may commit many individual crimes. The Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., was intended to give prosecutors powerful new tools to go after organized crime, where the ongoing, organized nature of the crimes added to the harm to society, beyond the harm caused by the individual crimes. Particularly successful racketeering organizations like the Latin Kings succeed in part because of their ability to keep members loyal and committed to criminal activity despite prison sentences.

In a racketeering case, the sentencing judge must determine how to punish a person based on his participation in an ongoing criminal enterprise when he has already been punished for ingredients that form the enterprise. The Guidelines

recognize the difficult and individualized nature of this in-
quiry. In some cases, the defendant's continued criminal ac-
tivity might reasonably be deemed an aggravating factor, call-
ing for a stiffer sentence. In others, earlier sentences imposed
by other courts might reasonably be deemed a mitigating fac-
tor. The Guidelines provide sentencing judges wide latitude
to give defendants some credit for time served, or not.

On appeal, De La Cruz has sharpened considerably the ar-
gument he made in the district court. He challenges only one
determination of the district judge. According to De La Cruz,
the judge erred by not discounting his sentence by the time he
served for his 2008 aggravated unlawful use of a weapon. He
claims this decision lay outside the district judge's discretion
because the Guidelines make this discount mandatory. He
identifies this mandate in U.S.S.G. § 5G1.3(b). It provides that
when a defendant received a prison sentence for an "offense
that is relevant conduct to the instant offense of conviction,"
the sentencing "court shall adjust the sentence for any period
of imprisonment already served on the undischarged term of
imprisonment," U.S.S.G. § 5G1.3(b)(1), and "the sentence for
the instant offense shall be imposed to run concurrently to the
remainder of the undischarged term of imprisonment,"
U.S.S.G. § 5G1.3(b)(2).

De La Cruz's 2008 weapon offense was an "offense that is
relevant conduct to the instant offense" of racketeering, but
§ 5G1.3(b) does not apply to that conviction because no por-
tion of that sentence remained "undischarged" at the time of
sentencing, as that provision requires. *United States v. Pietkie-
wicz*, 712 F.3d 1057, 1060 (7th Cir. 2013); *United States v. Black-
well*, 49 F.3d 1232, 1241 (7th Cir. 1995). As the presentence in-
vestigation report makes plain, Illinois released De La Cruz

on parole in July 2009 and closed that weapons case in July 2010. De La Cruz's prison term was not "undischarged" when he shot into the car and apartment of a rival gang member in March 2014 or committed any of the other four crimes detailed in the report between his release from prison in 2009 and his return to custody in 2014. De La Cruz also relies on Application Note 4 to § 5G1.3, but that note also applies only to an "undischarged term of imprisonment." U.S.S.G. § 5G1.3(d) & cmt. 4. Those provisions simply did not apply because, at the time of his federal sentencing, De La Cruz had completed his sentence for the 2008 offense.

It appears, however, De La Cruz's counsel cited an older version of the Guidelines Manual not used in this case and probably meant instead to cite Application Note 5 to § 5G1.3. In previous editions of the Guidelines Manual, Application Note 5—which refers to discharged prison terms—appeared as Application Note 4. See U.S.S.G. § 5G1.3 cmt. 4 (2013). What is now Application Note 5 makes clear that the judge's treatment of already-discharged prison terms is discretionary. Note 5 advises that in "the case of a discharged term of imprisonment, a downward departure *is not prohibited*" in certain circumstances. U.S.S.G. § 5G1.3 cmt. 5 (2016) (emphasis added). This note operates essentially as a cross-reference to § 5K2.23, which applies to already-discharged sentences. By guiding the sentencing court to "*See* §5K2.23," the note advises that the Guidelines do not compel sentencing judges to ignore a defendant's discharged prison terms if § 5K2.23 applies. *Id.* We now turn to that provision.

As we read his brief, De La Cruz also constructed an argument around § 5K2.23. Unlike § 5G1.3(b), which applies only to undischarged sentences, § 5K2.23 provides the district

court with discretion to adjust a defendant's sentence down-ward for discharged sentences. Also, unlike the mandatory credit required by § 5G1.3(b)—though the notion of a manda-tory term in the advisory Guidelines requires a little extra in-tellectual flexibility—any adjustment under § 5K2.23 is en-tirely discretionary. Employing a belt-and-suspenders ap-proach, that provision makes clear in its opening clause and concluding sentence that any adjustment for discharged sen-tences is up to the sound discretion of the district court:

> A downward departure *may be appropriate* if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of §5G1.3 … would have provided an adjustment had that completed term of imprisonment been undis-charged at the time of sentencing for the instant offense. Any such departure *should be fashioned to achieve a reasonable punishment* for the instant offense.

U.S.S.G. § 5K2.23 (emphases added). De La Cruz has not ex-plained why the district judge's decision not to apply § 5K2.23 was an abuse of her discretion, and we find no abuse of dis-cretion here.

As a final matter, De La Cruz asserts that the district judge "did not address" the 2008 weapons offense at sentencing. We have said that "whenever a district judge is required to make a discretionary ruling that is subject to appellate review, we have to satisfy ourselves … that [s]he exercised [her] discre-tion, that is, that [s]he considered the factors relevant to that exercise." *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005), citing *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999), and additional cases. The problem with De La Cruz's

argument is that when arguing before the district judge for downward adjustments, he bundled together his 2008 and 2014 offenses. In his sentencing memorandum, he added up all the time he served on his multiple convictions related to his federal racketeering charge and asked for a reduction of more than five years. He also failed to cite § 5K2.23 or any Guideline in his sentencing memorandum when arguing for an adjustment. At the sentencing hearing, De La Cruz's attorney again combined these separate offenses in his oral argument. Since he presented these convictions as one issue at sentencing, the district court surely did not err by treating his prior offenses the same way and focusing on the 2014 conviction.

The judgment of the district court is

AFFIRMED.