[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11464

_____

D.C. Docket No. 8:10-cr-00507-SCB-MAP-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSE ANTONIO GONZALEZ-MURILLO,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 4, 2017)

Before ROSENBAUM, JULIE CARNES, and GILMAN,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Two sentencing guidelines diverge in how they treat time spent in state custody on relevant conduct that is accounted for in a defendant's federal sentence, and that makes all the difference in this case.[1]  U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5G1.3(b) *requires* the district court to "adjust" a defendant's sentence to credit him for time served in state custody on relevant conduct covered by his federal sentence—but only when the defendant has undischarged time remaining on his state sentence.  Meanwhile, U.S.S.G. § 5K2.23 *allows* a district court to exercise discretion to "depart[]" from a guidelines sentence to reflect credit for time served in state custody on relevant conduct covered by his federal sentence when the related state sentence is completely discharged at the time of federal sentencing.

Because the guidelines contemplate an "adjustment" under Part G of Chapter 5, when a district court exercises its discretion to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(2) after a guideline amendment, the court must also credit the defendant for time served on an *undischarged* state sentence.  But since the guidelines envision a "departure" under Part K of Chapter 5, a district court is prohibited in § 3582(c)(2) proceedings from crediting the defendant for time served on a *discharged* state sentence.

---

[1] *See* Robert Frost, *The Road Not Taken*, *in* Mountain Interval 9 (1916), *available at* https://archive.org/details/mountaininterv00frosrich (last visited Mar. 29, 2017).

Here, at Defendant-Appellant Jose Antonio Gonzalez-Murillo's original sentencing, he moved for credit under U.S.S.G. § 5G1.3(b) for thirteen months' imprisonment he served in Mississippi custody on relevant conduct covered by his federal sentence. Though the district court purported to credit Gonzalez-Murillo under § 5G1.3(b) for that time against his federal sentence, it referred to what it did as a "departure." So when Gonzalez-Murillo sought a reduced sentence under 18 U.S.C. § 3582(c)(2) following a guideline amendment, the district court granted his motion and sentenced him to the low end of the amended guidelines range, but it determined that it lacked the authority to adjust his sentence to reflect credit for time served in Mississippi custody on relevant conduct.

We have independently reviewed the record, and it is not clear to us whether, at the time of Gonzalez-Murillo's original sentencing, Gonzalez-Murillo's state sentence of imprisonment was entirely discharged or whether, instead, Gonzalez-Murillo had additional state time remaining to be completed. Since the answer to that question drives the answer to whether, in Gonzalez-Murillo's § 3582(c)(2) proceeding, the district court was required to credit or prohibited from crediting Gonzalez-Murillo's Mississippi time, we remand this case to the district court to resolve that question and, if appropriate, modify Gonzalez-Murillo's reduced sentence accordingly.

**I.**

A.  The Offense Conduct

The United States began investigating Jose Antonio Gonzalez-Murillo for drug-trafficking activities in 2008.  On April 13, 2010, while Gonzalez-Murillo was under federal investigation in Florida, local law-enforcement officers stopped him as he rode through Richland, Mississippi, on his way from California to Florida.  In the car, officers found more than 4.6 kilograms of methamphetamine.

Based on this discovery, Mississippi charged Gonzalez-Murillo with possession of a controlled substance, and he remained in the custody of Mississippi authorities pending resolution of those charges.  He pled guilty on April 4, 2011, and, based on the presentence report ("PSR") in the federal case before us now, was purportedly sentenced to ten years' imprisonment, with six years suspended.

In the meantime, on December 2, 2010, in the Middle District of Florida, the United States obtained an indictment against Gonzalez-Murillo, stemming in part from his arrest in Mississippi.  As relevant here, the indictment charged conspiracy to possess with intent to distribute methamphetamine.

On April 13, 2011, for the purposes of obtaining Gonzalez-Murillo's presence at his initial appearance on the federal charge, the United States filed a petition in the Middle District of Florida for a writ of habeas corpus ad prosequendum directing the United States Marshal to take custody of Gonzalez-

4

Murillo, who was then confined in the Rankin County Jail in Brandon, Mississippi, into federal custody from the state of Mississippi. The writ was issued on April 14, 2011. In its summary of disposition of the Mississippi conviction, the PSR indicates that Gonzalez-Murillo was "released to United States Marshals Service" on April 19, 2011.

Notwithstanding the earlier issuance of a writ, however, the Middle District of Florida court docket indicates that Gonzalez-Murillo was arrested in the Southern District of Mississippi on April 21, 2011. Gonzalez-Murillo made his initial appearance on the federal charges before a Southern District of Mississippi magistrate judge, pursuant to Fed. R. Crim. P. 5(c)(2). At this proceeding, counsel for the government moved that Gonzalez-Murillo be detained. After Gonzalez-Murillo waived his right to a detention hearing, the magistrate judge remanded the defendant to the Marshal to await transfer to the Middle District of Florida.[2]

On May 11, 2011, Gonzalez-Murillo was arraigned in the Middle District of Florida on the federal indictment. At this arraignment, the magistrate judge stated that it appeared that Gonzalez-Murillo was potentially eligible for bail, based on an April 19, 2011, federal Pretrial Services report indicating that Gonzalez-Murillo had been released from his Mississippi sentence. The Assistant United States Attorney confirmed his understanding that the Mississippi sentences had

---

[2] Of course, were Gonzalez-Murillo being writted into federal custody while still serving a state sentence, he would not have been eligible for bail.

"ultimately resulted in time served" and argued that Gonzalez-Murillo should be detained.  Counsel for Gonzalez-Murillo indicated his belief that the court could set reasonable conditions of release but stated that he would make any argument for release by a later motion.

Ultimately, Gonzalez-Murillo entered a guilty plea to the conspiracy count. In his plea agreement, Gonzalez-Murillo admitted, as part of the factual basis for his guilty plea, that he was "in the process of transporting approximately 12 pounds of methamphetamine" on April 13, 2010, when he was arrested in Mississippi.

B.  Gonzalez-Murillo's 2011 Sentencing

At Gonzalez-Murillo's federal sentencing, the district court used the Sentencing Guidelines Manual in effect as of November 1, 2011, to determine an offense level of 31 and an advisory guidelines range of 108 to 135 months' imprisonment.  In calculating that range, the court held Gonzalez-Murillo responsible for offense conduct involving at least five, but less than fifteen, kilograms of methamphetamine, corresponding to a base offense level of 36 at that time.[3]  As part of this determination, the district court included the Mississippi events as relevant conduct under U.S.S.G. § 1B1.3.

---

[3] To arrive at an offense level of 31, the district court subtracted two points for application of the safety valve (U.S.S.G. § 5C1.2) and three points for acceptance of

6

During the sentencing, it became clear that the district court thought that a total sentence at the low end of the guidelines range would be appropriate to punish Gonzalez-Murillo for all of his relevant conduct, including the Mississippi events. The government agreed.

Gonzalez-Murillo noted that he had served roughly thirteen months in state custody for the Mississippi events and sought credit under U.S.S.G. § 5G1.3(b)(1) for that state custody on his federal sentence. Though the government did not object, it recommended (without referencing U.S.S.G. § 5K2.23) that the district court impose the credit in the form of a departure or a variance to be sure that Gonzalez-Murillo received his credit. The district court agreed that Gonzalez-Murillo was entitled to credit for his time in Mississippi custody because that time was for relevant offense conduct. Describing the government's suggestion as the "safest thing," the district court decided to grant the thirteen-month credit by calling it a "departure."

So the district court subtracted thirteen months from the low end of the guideline range (108-135) to arrive at a sentence of 95 months' imprisonment. In pronouncing the sentence, the district court explained that it had "sentenced [Gonzalez-Murillo] at the low end of the advisory guideline range after [it had]

responsibility (U.S.S.G. § 3E1.1(a) and (b)). The district court also determined a criminal-history category of I.

7

departed."    It further noted that it had "sentence[d] [Gonzalez-Murillo] to 95 months . . . based on [U.S.S.G. §] 5G1.3(b)."

In the Statement of Reasons for Gonzalez-Murillo's sentence, the district court described itself as having imposed a "departure pursuant to U.S.S.G. [§] 5G1.3(b)(1), and adjusted the sentence for the time already served in [Mississippi], that is relevant conduct and will not be credited to the federal sentence by the Bureau of Prisons."

At one point, the district court noted that Gonzalez-Murillo had been sentenced to ten years' imprisonment in the Mississippi case.[4]    At no time during the sentencing hearing, however, did the parties indicate that Gonzalez-Murillo had any time remaining to be served on that earlier sentence.    For example, defense counsel never requested that the federal sentence be made to run concurrently with the state sentence, and the court indicated that Gonzalez-Murillo would remain in the Marshal's custody pending designation of a federal facility.

C.  The Motion for Sentence Reduction

In February 2016, Gonzalez-Murillo filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2).    In support of his application, Gonzalez-Murillo argued that Amendment 782 to the Guidelines, made retroactively applicable

---

[4]    As noted, the PSR similarly reflects that Mississippi sentenced Gonzalez-Murillo to ten years' imprisonment, including a six-year suspended term of imprisonment. And it does not state that the sentence was modified to time served, but does state that Gonzalez-Murillo was released to the Marshal's service on  April 19, 2011.

through Amendment 788, reduced to 34 the offense level associated with the drug quantity for which he was held responsible.  As a result, Gonzalez-Murillo contended, the amendments had the effect of decreasing his guidelines range to 87 to 108 months' imprisonment, making him eligible for a reduction of his sentence. As Gonzalez-Murillo viewed things, the district court could choose to reduce his sentence as low as 74 months' imprisonment, since the low end of the guidelines range was 87 months, and the district court had previously found that, under U.S.S.G. § 5G1.3(b)(1), he was entitled to 13 months' credit for time served in Mississippi.

Though the government did not oppose Gonzalez-Murillo's request to be resentenced at the low end of the amended guidelines range—87 months' imprisonment—it argued that the district court lacked the power to grant any further reduction.  In particular, the government described the thirteen-month credit that the district court had applied at the original sentencing as a "departure" under § 5G1.3 and argued that since, in its view, § 5G1.3 authorizes departures only, a district court may not reapply a sentencing credit on resentencing under § 3582(c)(2).

The district court agreed with the government.[5]    It reduced Gonzalez-Murillo's sentence to 87 months.  But it concluded that it was not authorized to impose a sentence below 87 months.    Like the United States, the court characterized itself as, at the original sentencing, having credited Gonzalez-Murillo under § 5G1.3(b)(1) for the thirteen months in Mississippi.  Yet the district court described what it had done as a "departure."  And since a district court may not apply a departure, other than one based on substantial assistance, in § 3582(c)(2) reduced-sentencing proceedings, the district court did not credit Gonzalez-Murillo for the thirteen months in Mississippi.  Gonzalez-Murillo now appeals.

## II.

In considering on appeal a proceeding to modify a sentence under 18 U.S.C. § 3582(c)(2), we review *de novo* the district court's legal conclusions regarding the scope of its authority under the Sentencing Guidelines.  *See United States v. White*, 305 F.3d 1264, 1267 (11th Cir. 2002).

## III.

To determine whether Gonzalez-Murillo was entitled to an adjustment for his Mississippi custody to his reduced sentence imposed under § 3582(c)(2), we must begin with the statutory language.  Section 3582(c)(2) provides, in relevant part, that when the Sentencing Commission retroactively lowers a sentencing range

---

[5] Because the district court ruled on Gonzalez-Murillo's § 3582(c)(2) motion in March 2016, the 2015 version of the U.S. Sentencing Guidelines Manual governed.

applicable to a prisoner, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The Supreme Court has explained that § 3582(c)(2) sets forth a two-step process for determining whether a sentence modification should be granted. *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010). First, a district court must evaluate whether reducing the sentence "'is consistent with applicable policy statements issued by the Sentencing Commission'—namely, § 1B1.10." *Id.* at 826. This step determines the prisoner's eligibility for a reduced sentence under § 3582(c)(2). If a prisoner is eligible, the district court engages in the second step: exercising its discretion to decide whether, in consideration of the § 3553(a) factors, to reduce the sentence and, if so, by how much within the authorized range. *See id.* at 827.

Beginning with the first step, we turn to U.S.S.G. § 1B1.10 to ascertain whether Gonzalez-Murillo was eligible for a reduced sentence. Section 1B1.10, titled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range (Policy Statement)," generally permits a district court to reduce a prisoner's sentence when he was sentenced under a sentencing range that the Sentencing Commission later retroactively lowers. *See* U.S.S.G. § 1B1.10; *United States v.*

11

*Frazier*, 823 F.3d 1329, 1332 (11th Cir. 2016).    To determine a prisoner's eligibility for a reduced sentence, § 1B1.10(b) sets forth the following relevant procedure:

> (1)    In General.—. . . [T]he court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced.    In making such determination, the court shall substitute only the amendments . . . for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.
>
> (2)    Limitation and Prohibition on Extent of Reduction.—
>
>> (A)    Limitation.—Except [where a prisoner originally received a term of imprisonment beneath the low end of the guidelines, based on his substantial assistance], the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection.

U.S.S.G. § 1B1.10(b).

Section 1B1.10(b)(2) clarifies that, except for original sentences reduced beneath the bottom of the guidelines range as a result of a departure for substantial assistance, "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and [§ 1B1.10] to a term that is less than the minimum of

12

the amended guideline range determined under subdivision (1) of this subsection." U.S.S.G. § 1B1.10(b)(2).

The commentary to § 1B1.10, which we must follow,[6] provides further guidance on how we must apply the guideline.  It explains that, in referring to the prisoner's "applicable guideline range" under § 1B1.10(a)(1), § 1B1.10 means "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance."  U.S.S.G. § 1B1.10 cmt. n.1(A).

We have previously construed this commentary to require a court evaluating a § 3582(c)(2) motion for reduction of sentence to apply all eight steps of U.S.S.G. § 1B1.1(a) in order to determine the amended guideline range under § 1B1.10(a)(1).  *United States v. Hippolyte*, 712 F.3d 535, 540-41 (11th Cir. 2013).[7] As relevant in Gonzalez-Murillo's case, § 1B1.1(a), in turn, instructs as follows:

---

[6] *See Stinson v. United States*, 508 U.S. 36, 38 (1993); U.S.S.G. § 1B1.7.

[7] In *Hippolyte*, Hippolyte argued that a retroactive guideline amendment resulted in a lower applicable guideline range for him, making him eligible for a sentencing reduction under § 3582(c)(2), even though the alleged resulting guideline range was lower than the mandatory minimum term of imprisonment required by the statute under which he was convicted.  We rejected Hippolyte's claim, noting that step eight of § 1B1.1(a) requires the court to "use . . . Chapter Five Parts B through G to determine various sentencing requirements and options."  *Hippolyte*, 712 F.3d at 541.  And U.S.S.G. § 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."  In turn, § 1B1.1(a) "necessarily . . . require[s]" the court "to take into account [when determining the applicable guideline sentence for purposes of § 1B1.10] the mandatory minimum sentences that may be statutorily required."  *Id.*

(a)    The court shall determine the kinds of sentence and the guideline range as set forth in the guidelines (*see* 18 U.S.C. § 3553(a)(4)) by applying the provisions of this manual in the following order, except as specifically directed.

  (1)    Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* § 1B1.2.

  (2)    Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.

  (3)    Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.

  . . .

  (5)    Apply the adjustment as appropriate for the defendant's acceptance of responsibility from Part E of Chapter Three.

  (6)    Determine the defendant's criminal history category as specified in Part A of Chapter Four. Determine from Part B of Chapter Four any other applicable adjustments.

  (7)    Determine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above.

  (8)    For the particular guideline range, determine from Parts B through G of Chapter Five the

14

> sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.

U.S.S.G. § 1B1.1(a).  Here, the government, the district court, and Gonzalez-Murillo all agreed that applying steps one through seven of § 1B1.1(a) results in a guideline range of 87 to 108 months' imprisonment.  We share that view.

But that does not complete our inquiry.  Instead, *Hippolyte* binds us to apply § 1B1.1(a)(8) before we can arrive at the amended guideline range for purposes of § 1B1.10(a)(1).  And § 1B1.10(b)(1) requires the district court on a § 3582(c)(2) motion to "leave all other guideline application decisions unaffected."  U.S.S.G. § 1B1.10(b)(1).  So if any of Parts B through G of Chapter Five applied at Gonzalez-Murillo's original sentencing, we must continue to apply that part or those parts in the same way in resolving the § 3582(c)(2) motion.  We therefore consider whether Parts B through G of Chapter Five have any effect on Gonzalez-Murillo's applicable guideline range.

In the § 3582(c)(2) proceeding in this case, the district court concluded that, at Gonzalez-Murillo's original sentencing, it had applied U.S.S.G. § 5G1.3(b)(1)— a guideline that appears in Part G of Chapter Five.  So we take a closer look at § 5G1.3(b), including both subparts (1) and (2).

The Supreme Court has explained the purpose of § 5G1.3 as "attempt[ing] to achieve some coordination of sentences imposed [where separate prosecutions

occur based in part on the same relevant conduct] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time." *Witte v. United States*, 515 U.S. 389, 404 (1995). By its terms, the guideline requires the court to "adjust" a defendant's sentence when all four conditions it sets forth are satisfied: (1) the defendant has time spent in custody ("prior custody") other than for the convictions for which he is being sentenced; (2) that time served has been for relevant conduct that is accounted for by the sentence imposed for the federal crime of conviction under consideration at the sentencing; (3) the Bureau of Prisons will not itself credit the time spent in prior custody; and (4) the defendant has undischarged time remaining on his prior custody:

> If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . , the sentence for the instant offense shall be imposed as follows:
>
> (1)    the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2)    the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

U.S.S.G. § 5G1.3(b)(1).

Section 5G1.3(b)'s language renders the provision mandatory; a court must adjust a prisoner's sentence when § 5G1.3(b)'s requirements are satisfied. *See* U.S.S.G. § 5G1.3(b)(1) (stating that "the sentence for the instant offense *shall be imposed as follows*: the court *shall* adjust the sentence . . .") (emphasis added); *see also United States v. Knight*, 562 F.3d 1314, 1329 (11th Cir. 2009) (vacating and remanding for resentencing where the district court did not credit the prisoner for time served in state custody on relevant conduct).

And significantly, the adjustment that § 5G1.3(b) requires is not a departure. "Departure" is a term of art under the Sentencing Guidelines. Other than those departures that the guidelines expressly so designate, *see, e.g.*, U.S.S.G. § 5K1.1 (substantial assistance); *id.* § 5K2.1 (death results from offense), a district court may depart from the guidelines only when it "finds . . . an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described [by the guidelines]." *United States v. Booker*, 543 U.S. 220, 234 (2005) (quoting 18 U.S.C. § 3553(b)(1)) (quotation marks omitted).

Nothing in or relating to § 5G1.3(b) expressly designates the adjustment that section requires as a "departure." So it can be a departure only if it is not "adequately taken into consideration" by the guidelines. Of course, the mere

17

existence of § 5G1.3(b) demonstrates that that is not the case.  As a result, the §

5G1.3(b) adjustment cannot be a departure.

Where § 5G1.3(b) applies, the application notes further specify how the

district court should memorialize on the criminal judgment its determination that §

5G1.3(b) applies:

> [T]he court should note on the Judgment in a Criminal Case Order (i) the applicable subsection (*e.g.*, § 5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a sentence reduction pursuant to § 5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons.

U.S.S.G. § 5G1.3 cmt. n.2(C).

If a defendant cannot show that he is entitled to receive credit under §

5G1.3(b) for prior custody, he may still be able to obtain credit under § 5K2.23 for

his time served.  *See* U.S.S.G. § 5G1.3 cmt. n.5.[8]  Though similar to § 5G1.3(b) in

many ways, § 5K2.23 differs from it in three material respects:  (1) § 5K2.23

applies when the prior custody has been served on a sentence that is fully

discharged (rather than undischarged) at the time of the federal sentencing; (2) §

5K2.23 allows for a departure, not an adjustment; and (3) when the requirements of

---

[8] "Downward Departure Provision.—In the case of a discharged term of imprisonment, a downward departure is not prohibited if the defendant (A) has completed serving a term of imprisonment; and (B) subsection (b) would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. *See* § 5K2.23 (Discharged Terms of Imprisonment)."  U.S.S.G. § 5G1.3 cmt. n.5.

18

§ 5K2.23 are satisfied, the guideline does not mandate that a district court credit the prior custody; rather, the court has discretion to depart downward if it wishes to do so.  Section 5K2.23 provides, in relevant part,

> <u>Discharged Terms of Imprisonment</u> (Policy Statement)
> A downward departure may be appropriate if the defendant (1) has completed serving a term of imprisonment; and (2) subsection (b) of § 5G1.3 . . . would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense.  Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5K2.23.

Of course, Part K of Chapter 5, where § 5K2.23 resides, does not fall within Parts B through G of Chapter Five the way that § 5G1.3(b) does.  As a result, unlike with a § 5G1.3(b) adjustment—which a court must reapply under § 1B1.1(a) if it elects to reduce a defendant's sentence under § 3582(c)(2)—a court may not reapply a § 5K2.23 departure in determining the "applicable guideline range" under § 1B1.1(a) when it chooses to reduce a defendant's sentence under § 3582(c)(2).

So when we are evaluating whether a defendant should be credited for prior custody when a district court has chosen to exercise its discretion to reduce a defendant's sentence under § 3582(c)(2), we must ascertain whether § 5G1.3(b) or § 5K2.23 governed the court's earlier award of credit.  The key differentiating

19

factor between the two provisions concerns the question of whether, at the time of the defendant's original federal sentencing, the prior sentence was completely discharged or instead included an undischarged portion.

In Gonzalez-Murillo's case, the Statement of Reasons confirms that the district court at his original sentencing appeared to believe that § 5G1.3 applied, expressly identifying it as its basis for subtracting thirteen months from the sentence it otherwise would have imposed on Gonzalez-Murillo. And, in fact, the district court made findings on three of § 5G1.3's requirements. First, the court determined that Gonzalez-Murillo spent thirteen months in Mississippi custody on Mississippi charges. Second, the court found that the time Gonzalez-Murillo spent in Mississippi custody was for relevant conduct for which he was held accountable in his sentence on federal conspiracy charges. And third, the court concluded that the Bureau of Prisons would not credit Gonzalez-Murillo for that time.

But neither the Judgment nor the Statement of Reasons indicates whether Gonzalez-Murillo's Mississippi custody was completely discharged at the time of his federal sentencing. Meanwhile, the 2011 arraignment proceeding before the magistrate judge in Florida suggests that it was. Adding to the mystery, the district court at the original sentencing described the credit it purported to apply under § 5G1.3(b) as a "departure," so it later concluded in the 2016 § 3582(c)(2) proceeding that it lacked the authority to reapply the credit. As we have noted,

20

though, any credit awarded under § 5G1.3(b) is an adjustment, not a departure, and once § 5G1.3(b)'s requirements are satisfied, the district court must apply that adjustment to any reduced sentence it chooses to impose.

Since we cannot be certain from this record whether Gonzalez-Murillo's Mississippi sentence had been discharged at the time of his original sentencing in this case or whether, instead, part of it remained undischarged, we remand this matter to the district court to make a factual finding in that regard. If the Mississippi sentence was not fully discharged when Gonzalez-Murillo was originally sentenced, the district court shall apply the thirteen-month § 5G1.3(b) adjustment to Gonzalez-Murillo's reduced sentence for a resulting reduced sentence of 74 months. If, on the other hand, the Mississippi sentence was fully discharged when Gonzalez-Murillo was originally sentenced, the district court has no discretion to further reduce Gonzalez-Murillo's reduced sentence below 84 months because the credit it awarded resulted from a departure under § 5K2.23, and that type of departure may not be applied in a § 3582(c)(2) proceeding.

## IV.

For the reasons we have discussed, we remand this case for further proceedings consistent with this opinion. In doing so, we note that if Gonzalez-Murillo's Mississippi sentence was not fully discharged when he was originally sentenced, thereby making § 5G1.3 applicable, it appears that Gonzalez-Murillo

may be eligible for release either immediately or in the near future. For this reason, we direct the district court to conduct the further proceedings in this case at the earliest possible time.

**REMANDED FOR FURTHER PROCEEDINGS.**

ROSENBAUM, Circuit Judge, concurring:

Of course, we are bound to apply the law as it is written. So that is what we do. Here, what the Sentencing Guidelines require is clear and unambiguous. I write separately to note only that the apparent incongruity of results between §§ 5G1.3 and 5K2.23 seems out of line with the purpose of § 5G1.3.

As we have indicated, the Supreme Court has described § 5G1.3 as an "attempt[] to achieve some coordination of sentences imposed [where separate prosecutions occur based in part on the same relevant conduct] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time." *Witte*, 515 U.S. at 404. Indeed, the Supreme Court has characterized § 5G1.3 as a "[s]ignificant safeguard[] built into the Sentencing Guidelines . . . to protect [a] petitioner against having the length of his sentence multiplied by duplicative consideration of the same criminal conduct." *Id.* at 405.

We have further elaborated on the important role of § 5G1.3 in "protect[ing] a criminal defendant from duplicative prosecutions." *United States v. Bidwell*, 393 F.3d 1206, 1209 (11th Cir. 2004). As we have explained, "The Double Jeopardy Clause does not prevent different sovereigns (*i.e.*, a state government and the

23

federal government) from punishing a defendant for the same criminal conduct.

But §§ 5G1.3 and 1B1.3 [explaining the meaning of "relevant conduct" in the Guidelines] do. These sections seek 'to provide one, uniform punishment for the same criminal activity.'" *Id.* (citation omitted).

Whether a defendant's state sentence for relevant conduct has been fully discharged or not at the time of his federal sentencing seems to me to have no logical bearing on the district court's determination of an appropriate total sentence for all relevant conduct on which it is sentencing the defendant.

I am aware that two circuits have found a rational basis for the difference in treatment between defendants with discharged and undischarged sentences on relevant conduct.[1] *See United States v. Dunham*, 295 F.3d 605, 610-11 (6th Cir. 2002); *United States v. Otto*, 176 F.3d 416, 418 (8th Cir. 1999). Most respectfully, I disagree that either circuit's analysis survives scrutiny.[2]

---

[1] A third circuit denied an equal-protection challenge to 18 U.S.C. § 3584's distinction in treatment between discharged and undischarged sentences, but it did not offer an explanation as to why the distinction has a rational basis, instead finding that the defendant had failed to meet his burden to show that a rational basis was lacking. *See United States v. Lucas*, 745 F.3d 626, 630-31 (2d Cir. 2014).

[2] In fairness to the Sixth and Eighth Circuits, the version of § 5G1.3(b) that they reviewed differed from the one applicable in Gonzalez-Murillo's case. The older version did not contain what is now § 5G1.3(b)(1). Instead, § 5G1.3(b) then provided, "If . . . the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." That provision is effectively the equivalent of what is now § 5G1.3(b)(2). The difference in provisions might help explain some of these circuits' analysis. But to simplify my discussion of the reasoning that the Eighth and Sixth Circuits provided justifying the difference in treatment between discharged

First, the Sixth Circuit has opined that the distinction between discharged and undischarged sentences "ensures that if two defendants who are convicted of identical state law crimes are subsequently convicted on a federal charge for the same conduct that formed the factual basis of their state convictions, then those two defendants will serve an equal term of imprisonment upon their federal conviction, regardless of whether their state sentence had been fully discharged." *Dunham*, 295 F.3d at 611. In the Sixth Circuit's view, if this distinction did not exist and defendants were credited for time served on both discharged and undischarged state sentences involving relevant conduct, "a defendant with a previously discharged state sentence would serve a shorter term of imprisonment upon his subsequent federal conviction than would a defendant with an undischarged state sentence." *Id.*

Most respectfully, I disagree. Imagine two defendants charged by both the state and the federal government for the same conduct, but Defendant A is arrested on his state charges before Defendant B. Both defendants are ultimately sentenced to the exact same term of ten months' imprisonment for their state crimes. Because Defendant A was arrested earlier than Defendant B, though, Defendant A completes his sentence before being arrested for his federal crimes. Defendant B,

and undischarged sentences, I address their articulated reasons as though they offered them in response to the current version of § 5G1.3(b).

25

on the other hand, is writted into federal custody to face federal charges while he still has one month left on the sentence that Defendant A has already completed. In both cases, the district court concludes that the total appropriate sentence is two years' imprisonment.

Under § 5G1.3(b), Defendant B must be sentenced to 15 months in federal prison instead of 24 months because he must receive credit for the nine months he has served in state prison since his state sentence is not fully discharged. And the tenth month on the state time must run concurrently with the federal sentence imposed. *See* § 5G1.3(b)(2). So between his state and federal sentences, Defendant B serves a total of 24 months. Defendant A, however, is not entitled to credit for his ten months in state custody because his state sentence has been completely discharged at the time of his federal sentencing. Though the district court could choose to downwardly depart under § 5K2.23, it decides not to do so. So it imposes a federal sentence of 24 months' imprisonment. Defendant A will then serve a total sentence of 34 months on his relevant conduct, accounting for both the state and federal time he will spend.[3]

_____

[3] Gonzalez-Murillo's case is not before us on an equal-protection challenge as it was before the Sixth Circuit. So we do not consider and I do not suggest a view on that issue. Instead, I discuss *Dunham* for the sole purpose of explaining why I do not believe that the Sixth Circuit's explanation for the difference in treatment between discharged and undischarged sentences shows how the mere fact that a state sentence may have been discharged or undischarged bears on what the total punishment for all relevant conduct should be. The Northern District of Illinois reached a similar conclusion about *Dunham*'s analysis when it considered it in the context of evaluating the distinction in 18 U.S.C. § 3584 between discharged

26

And if the guidelines are amended so that Defendants A and B are eligible for reduced sentences under § 3582(c)(2), then even if, during his original sentencing, Defendant A receives a downward departure for time served in state custody on relevant conduct, he cannot get the benefit of that credit in the § 3582(c)(2) proceeding. But Defendant B must receive the credit.

As for the Eighth Circuit, it reasoned that "[w]ith undischarged sentences, there remains uncertainty as to the amount of time a defendant will actually serve." *Otto*, 176 F.3d at 418. So, according to the Eighth Circuit, "a defendant could be paroled, placed on probation after serving some period of shock detention, given credit off a sentence for good behavior, or have the sentence vacated." *Id.* But with a discharged sentence, "[t]here are no such contingencies." *Id.*

In my view, this analysis does not explain how or why crediting time served on state sentences with remaining time, but not crediting fully discharged state sentences on relevant conduct, furthers the purpose of imposing a single total

---

and undischarged terms of imprisonment. *See United States v. Hill*, 187 F. Supp. 3d 959, 968 (N.D. Ill. 2016). There, the court concluded that the distinction was an "arbitrary [one] that violates the Fifth Amendment's due process guarantee." Again, though, this issue is not before us, so I do not opine on it. I cite *Hill*'s determination for only the purpose of demonstrating that the distinction between how discharged and undischarged terms of imprisonment are treated seems inconsistent with the purpose of § 5G1.3 to effectively impose a total term of imprisonment that accounts for both the federal and relevant state conduct.

27

punishment for all relevant conduct.[4]  Rather, it seems to me that crediting all state time already served for relevant conduct—whether the sentence is fully discharged or not at the time of federal sentencing—and running any undischarged state time concurrently with the federal sentence imposed is the only way to accomplish a total sentence that accounts for all relevant conduct without being duplicative.

In short, it is not clear to me why the mere discharged or undischarged nature of a state sentence involving relevant conduct should affect, at either his original sentencing or his § 3582(c)(2) proceedings, a defendant's entitlement to credit for his state custody.  Perhaps a good reason for the distinction in treatment between discharged and undischarged sentences exists, one that makes sense in light of the purpose of § 5G1.3(b) as the Supreme Court has explained that purpose.  But if not, it is time to extinguish that difference in treatment.

---

[4] If anything, it suggests that better reasons exist to credit discharged time than undischarged time.  But § 5G1.3(b)(2) accounts for that problem by making undischarged time run concurrently with federal time imposed.

28