[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-15251

_____

D.C. Docket No. 2:17-cr-00508-WKW-GMB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHRISTOPHER JASON HENRY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(August 7, 2020)

Before WILLIAM PRYOR, Chief Judge, GRANT, Circuit Judge, and ANTOON,[*]
District Judge.

WILLIAM PRYOR, Chief Judge:

---

[*] Honorable John Antoon II, United States District Judge for the Middle District of Florida,
sitting by designation.

This appeal requires us to decide whether the district court erred by refusing to adjust Christopher Henry's federal sentence for time served on a related state sentence. *See* United States Sentencing Guidelines Manual § 5G1.3(b)(1) (Nov. 2016). The Sentencing Guidelines provide that a district court "shall adjust" a defendant's sentence for time served on a related sentence if certain requirements are satisfied. *Id.* The parties have never disputed that the relevant requirements are satisfied, but the district court nonetheless refused to adjust Henry's sentence. The government argues that because the Guidelines are advisory, *see United States v. Booker*, 543 U.S. 220, 245 (2005), the district court was not required to adjust Henry's sentence. But our precedent establishes that an adjustment under section 5G1.3(b)(1) of the Guidelines is mandatory when its requirements are satisfied, and our precedent is consistent with *Booker*. We vacate Henry's sentence and remand for the district court to adjust his sentence as section 5G1.3(b)(1) requires.

## I. BACKGROUND

In November 2016, Christopher Henry broke into a business in Covington County, Alabama, and stole eight firearms. Police arrested Henry a few days later. At the time of his burglary, Henry had a prior conviction for assault and 10 prior convictions for burglary. He pleaded guilty to burglary in the Covington County Circuit Court for his latest crime. In February 2017, that court sentenced Henry to 20 years of imprisonment.

In November 2017, a federal grand jury indicted Henry on one count of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), based on his theft of the firearms. In January 2018, while Henry was still serving his state sentence for burglary, the United States obtained a writ of habeas corpus *ad prosequendum* from the district court. The writ directed the Covington County Jail to deliver Henry to the United States Marshal for prosecution on the pending federal charge. After entering federal custody, Henry pleaded guilty to the felon-in-possession charge.

A probation officer prepared a presentence investigation report using the 2016 edition of the United States Sentencing Guidelines. The report assigned Henry a total offense level of 27 and a criminal history category of VI. Based on those calculations, Henry's guideline range of imprisonment was 130 to 162 months. But because the statutory maximum sentence for his crime was 10 years of imprisonment, *see* 18 U.S.C. § 924(a)(2), his guideline sentence became 120 months of imprisonment, *see* U.S.S.G. § 5G1.1(a).

At his sentencing hearing in November 2018, Henry relied on section 5G1.3(b) of the Guidelines to request a downward adjustment of his sentence. He argued that the district court was required to adjust his sentence for the 24 months he had already served on his state sentence for burglary, which was relevant conduct to his federal firearm offense. *See* U.S.S.G. § 5G1.3(b)(1). Subtracting 24

3

months from his guideline sentence of 120 months of imprisonment would yield a sentence of 96 months of imprisonment. And Henry urged the district court to vary downward and sentence him to 60 months of imprisonment based on the statutory factors. *See* 18 U.S.C. § 3553(a). Henry also requested that his federal sentence run concurrently with his state sentence. *See* U.S.S.G. § 5G1.3(b)(2).

The government "conceptually agree[d]" with Henry that his sentence should be adjusted for the 24 months he had already served on his state burglary sentence. But because Henry's original guideline range of imprisonment was 130 to 162 months, the government proposed that the district court subtract the 24 months from that range to yield a new guideline range of 106 to 138 months. The government asked the district court to impose the statutory maximum sentence of 120 months of imprisonment, near the middle of the new range it had calculated. The government also agreed with Henry that his federal and state sentences should run concurrently.

The district court sentenced Henry to 108 months of imprisonment. Because of Henry's many prior convictions for burglary, the court refused to impose a lower sentence. But it explained that Henry's federal and state sentences would run concurrently because his state burglary conviction was relevant conduct to the federal offense. *See* U.S.S.G. § 5G1.3(b)(2).

4

Henry asked the district court to clarify whether it had adjusted his sentence by 24 months under section 5G1.3(b)(1). The district court responded, "No. I'm giving the sentence under all the circumstances. . . . [And] 108 [months of imprisonment] is my judgment of a fair sentence under all the circumstances in this case."

Henry objected to the sentence. He explained that section 5G1.3(b)(1) provides that a court "shall" adjust a defendant's sentence based on an undischarged term of imprisonment for relevant conduct. The district court responded that "Congress gets to say 'shall,'" but "[t]he Sentencing Commission doesn't get to say 'shall.'" It overruled Henry's objection.

## II. STANDARD OF REVIEW

We review an interpretation of the Sentencing Guidelines *de novo*. *United States v. Whyte*, 928 F.3d 1317, 1327 (11th Cir. 2019).

## III. DISCUSSION

Section 5G1.3 of the Guidelines governs the "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment." U.S.S.G. § 5G1.3. Subsection (b)(1) of that guideline requires the district court to adjust a defendant's sentence for time served on an earlier sentence if certain conditions are satisfied:

> (b)    If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . , the sentence for the instant offense shall be imposed as follows:

5

(1)     the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons[.]

*Id.* § 5G1.3(b)(1).

This guideline uses mandatory language: it says that "the sentence . . . *shall* be imposed as follows" and that "the court *shall* adjust the sentence" if the relevant requirements are satisfied. *Id.* (emphases added); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 11, at 112 (2012) ("Mandatory words impose a duty; permissive words grant discretion."). Our precedents hold that this language "renders the provision mandatory; a court must adjust a prisoner's sentence when [the] requirements are satisfied." *United States v. Gonzalez-Murillo*, 852 F.3d 1329, 1338 (11th Cir. 2017); *see also United States v. Knight*, 562 F.3d 1314, 1329 (11th Cir. 2009) (vacating a sentence because the district court failed to apply section 5G1.3(b)(1)).

To trigger a mandatory adjustment under this guideline, four requirements must be satisfied. First, the defendant must have served a period of imprisonment for another offense. Second, that term of imprisonment must remain undischarged. Third, the other offense must be relevant conduct to the instant offense of conviction. And fourth, the Bureau of Prisons must not credit that period of

6

imprisonment to the defendant's new sentence. U.S.S.G. § 5G1.3(b)(1); *see also Gonzalez-Murillo*, 852 F.3d at 1337.

The parties have never disputed that the requirements were satisfied in Henry's case. Henry had served 24 months in custody for his state burglary offense at the time of his federal sentencing—from November 2016 to November 2018. Although he entered federal custody in January 2018 through a writ of habeas corpus *ad prosequendum*, he continued to serve his state sentence as his federal proceedings progressed. *See Vignera v. Att'y Gen.*, 455 F.2d 637, 637–38 (5th Cir. 1972). The 20-year state sentence remains undischarged, and his theft of the eight firearms was relevant conduct to his federal felon-in-possession offense. *See* U.S.S.G. § 1B1.3(a)(1)(A). And finally, the parties agree that the Bureau of Prisons will not credit those 24 months to Henry's federal sentence. By statute, the Bureau awards credit for prior custody if the time spent in official detention is not "credited against another sentence." 18 U.S.C. § 3585(b). And the government does not dispute that Alabama will credit to Henry's state sentence the 24 months he spent in official detention between his arrest by state authorities and his federal sentencing.

A straightforward application of the guideline required the district court to adjust Henry's sentence. But the district court refused to do so on the ground that "[t]he Sentencing Commission doesn't get to say 'shall.'" The government echoes

7

this proposition on appeal. It argues that because the Guidelines are advisory under *Booker*, the district court was free to vary from section 5G1.3(b)(1) based on the statutory sentencing factors. *See* 18 U.S.C. § 3553(a). We reject this argument because *Booker* did not render section 5G1.3(b)(1) advisory.

The government resists the straightforward application of the mandatory language in section 5G1.3(b)(1) by invoking the well-established principle that the Guidelines are "advisory" under *Booker*. *See* 543 U.S. at 245. If the Guidelines are advisory, the government contends, then section 5G1.3(b)(1) cannot have required the district court to adjust Henry's sentence. After all, it is hornbook law in the post-*Booker* era that after considering the Guidelines and the statutory sentencing factors, district courts may impose any appropriate sentence "within statutory limits," subject only to "appellate review for reasonableness." *Pepper v. United States*, 562 U.S. 476, 490 (2011) (internal quotation marks omitted).

To be sure, post-*Booker* references to the "advisory" Guidelines are ubiquitous in judicial opinions. *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) ("[U]nder *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only."). Indeed, "[v]irtually all of us are in the habit of distinguishing, in one way or another, between the 'mandatory Guidelines' that operated before *Booker* and the 'advisory Guidelines' that have operated since." *Lester v. United States*, 921 F.3d 1306, 1312 (11th Cir. 2019) (W. Pryor, J., respecting the denial of

8

rehearing en banc). But sometimes idioms that are accurate in one respect "may be erroneous or inadequate in other respects." *Id.* The maxim "advisory Guidelines" is no exception.

Mandatory application of section 5G1.3(b)(1) would have further limited the permissible sentences for Henry beyond those permitted by his statutory range. After the district court considered the Guidelines and the statutory factors, it imposed a sentence of 108 months of imprisonment—well below the 120-month statutory maximum. But a mandatory adjustment for the 24 months Henry had already served on his state burglary sentence would have required an even lower sentence. At most, the district court could have sentenced Henry to 96 months of imprisonment—the statutory maximum sentence of 120 months adjusted downward by 24 months.

According to the government, this result would contravene the advisory Guidelines regime of *Booker*. *Cf. United States v. Bangsengthong*, 550 F.3d 681, 682 (7th Cir. 2008) ("*Booker* made *all* Guidelines advisory . . . ." (emphasis added)); *United States v. De La Cruz*, 897 F.3d 841, 846 (7th Cir. 2018) ("[T]he notion of a mandatory term in the advisory Guidelines requires . . . intellectual flexibility."). We disagree. This argument misunderstands which aspects of the Guidelines *Booker* held advisory.

9

*Booker* involved a Sixth Amendment challenge to the practice of judges finding facts at sentencing that increased a defendant's mandatory sentencing range under the Guidelines. 543 U.S. at 226–27. The Court held that this practice violated the Sixth Amendment right to a jury trial. *Id.* at 227–29 & n.1. To remedy the constitutional violation, a separate majority of the Court held invalid the provision of federal law, 18 U.S.C. § 3553(b)(1), that made the sentencing *range* produced by the Guidelines binding on the sentencing court. *Booker*, 543 U.S. at 245. The Court also invalidated the provision that mandated *de novo* appellate review of departures from the guideline range, 18 U.S.C. § 3742(e). *Booker*, 543 U.S. at 259. And because the Court determined that making the guideline range mandatory in some cases and advisory in others would be contrary to the intent of Congress, it held that the guideline range is *always* advisory—even when mandatory application of the guideline range would not violate the Sixth Amendment. *Id.* at 266–67.

Although *Booker* held the guideline *range* advisory, it did not make every provision of the Guidelines optional. Both before and after *Booker*, sentencing requirements in the Guidelines that neither enhance a defendant's sentence based on judicial factfinding nor mandate the imposition of a sentence within the guideline range are binding on sentencing courts, so long as they do not conflict

10

with a federal statute or the Constitution. As explained below, a mandatory adjustment under section 5G1.3(b)(1) is one such requirement.

To understand why some aspects of the Guidelines remain binding after *Booker*, it helps to review why all the Guidelines were ever considered binding in the first place. The Sentencing Guidelines "are the equivalent of legislative rules adopted by federal agencies." *Stinson v. United States*, 508 U.S. 36, 45 (1993). The United States Sentencing Commission promulgates the Guidelines using the rulemaking procedures of the Administrative Procedure Act, *see* 28 U.S.C. § 994(x), which gives the Guidelines "the force and effect of law," *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (internal quotation marks omitted). As the Supreme Court explained in rejecting a constitutional challenge to the Sentencing Commission, "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Mistretta v. United States*, 488 U.S. 361, 391 (1989); *see also id.* at 413 (Scalia, J., dissenting) (agreeing that the Guidelines "have the force and effect of laws").

The nature of the Guidelines as law is reflected in several provisions of the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987, which created the Sentencing Commission and empowered it to promulgate the Guidelines. As we all know, the Act purported to make the sentencing range produced by the Guidelines binding on the sentencing court, although *Booker* later held that it could

11

not do so. 18 U.S.C. § 3553(b)(1). But the Act also provided a right of appeal to both the defendant and the government if a sentence "was imposed as a result of an incorrect application of the sentencing guidelines." *Id.* § 3742(a)(2), (b)(2). And it instructed the courts of appeals to "remand the case for further sentencing proceedings" if "the sentence was imposed . . . as a result of an incorrect application of the sentencing guidelines." *Id.* § 3742(f)(1). Although *Booker* held invalid the provision that made the guideline range mandatory, *id.* § 3553(b)(1), it did not affect section 3742(f), which requires federal courts to correctly apply the Guidelines in all other respects. *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005).

Because the Guidelines have the force and effect of law, sentencing courts may refuse to apply them only if they conflict with a higher source of law. *Cf. Stinson*, 508 U.S. at 38 (holding that even the commentary to a guideline is binding unless it conflicts with the Constitution, a federal statute, or the guideline itself). *Booker* makes clear that, in the light of its constitutional holding, mandatory application of the guideline range would be inconsistent with the otherwise enforceable provisions of the Sentencing Reform Act. *See Lester*, 921 F.3d at 1314–15 (W. Pryor, J., respecting the denial of rehearing en banc). For that reason, sentencing courts need not—indeed, they *must* not—treat the guideline range as mandatory. *See United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009).

12

Mandatory language in the Guidelines also must yield to any contrary instructions in other federal statutes. *Compare* U.S.S.G. § 5G1.2(c)–(d) (mandating that certain sentences "shall run concurrently"), *with* 18 U.S.C. § 3584(a)–(b) (giving sentencing courts discretion to run multiple terms of imprisonment "concurrently or consecutively" and instructing that they "shall consider" the section 3553(a) factors in making that determination); *cf. United States v. Jarvis*, 606 F.3d 552, 554 (8th Cir. 2010) (concluding that "the guidelines do not control whether sentences run concurrently or consecutively"). But *Booker* neither requires nor countenances district courts treating every "shall" in the Guidelines as a "may." Absent a conflict with a higher source of federal law, sentencing courts must follow mandatory instructions in the Guidelines, which "bind [them] in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Mistretta*, 488 U.S. at 391.

To determine whether section 5G1.3(b)(1) is mandatory under *Booker*, we must decide whether that provision affects the guideline range. If it does, then district courts may of course vary from the sentencing range that section 5G1.3(b)(1) would provide based on the statutory sentencing factors. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). But if it does not, then *Booker* provides no basis to disregard the mandatory language of the guideline.

13

Section 5G1.3(b)(1) "does not reduce the defendant's guideline range." *United States v. Helm*, 891 F.3d 740, 743 (8th Cir. 2018) (emphasis and internal quotation marks omitted). It instead mandates a sentence reduction for certain defendants "*after* the court has determined the applicable range." *Id.* (internal quotation marks omitted). This conclusion follows from the text of section 5G1.3, the structure of the Guidelines, and the commentary to section 5G1.3. *See United States v. Lange*, 862 F.3d 1290, 1294 (11th Cir. 2017) (explaining that the traditional rules of statutory interpretation govern our interpretation of the Guidelines).

The text of section 5G1.3 makes clear that the guideline governs the imposition of a sentence, not the calculation of the guideline range. The title of that guideline is "*Imposition* of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment." U.S.S.G. § 5G1.3 (emphasis added); *see also* Scalia & Garner, *Reading Law* § 35, at 221 ("The title and headings are permissible indicators of meaning."). Subsection (b) of the guideline provides instructions about how "the sentence for the instant offense *shall be imposed*" in certain circumstances, not how to calculate the guideline range. U.S.S.G. § 5G1.3(b) (emphasis added). And the guideline requires district courts to "adjust *the sentence*" imposed on a defendant, not the defendant's guideline range. *Id.* § 5G1.3(b)(1) (emphasis added). In short, this guideline

14

mandates a sentence adjustment for a certain class of defendants; it has nothing to do with calculating a defendant's guideline range.

The structure of the Guidelines confirms that section 5G1.3(b) plays no role in calculating the guideline range. The Guidelines provide eight steps for determining "the kinds of sentence and the guideline range" to be used at sentencing. *Id.* § 1B1.1(a). The first five steps provide instructions for calculating a defendant's offense level, and the sixth step explains how to determine the defendant's criminal history category. *Id.* § 1B1.1(a)(1)–(6). Step seven then instructs the sentencing court to "[d]etermine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above." *Id.* § 1B1.1(a)(7). At that point, calculation of the guideline range is complete. *See Helm*, 891 F.3d at 742. Finally, step eight instructs: "*For the particular guideline range*, determine from Parts B through G of Chapter Five *the sentencing requirements and options* related to probation, imprisonment, supervision conditions, fines, and restitution." U.S.S.G. § 1B1.1(a)(8) (emphases added). Section 5G1.3, which appears in Part G of Chapter 5, is a "sentencing requirement[]" related to imprisonment. *Id.* And a sentencing court applies that requirement only when it "impose[s]" sentence, *id.* § 5G1.3(b)—that is, *after* it has calculated the guideline range, determined any sentencing requirements, and selected a sentence based on the statutory factors, *see id.* § 1B1.1(a)(7)–(8), (c).

15

The commentary to section 5G1.3(b), which we must follow, *see United States v. Burke*, 863 F.3d 1355, 1358 (11th Cir. 2017), also makes clear that any adjustment under that guideline must occur after the district court has calculated the guideline range and determined the appropriate total punishment to impose. Application Note 2(D) gives an example of a defendant with a guideline range of 12 to 18 months who has already served six months on a nine-month state sentence for an offense that was relevant conduct. *See* U.S.S.G. § 5G1.3 cmt. n.2(D). If "[t]he court determines that a sentence of 13 months provides the appropriate total punishment," the application note explains, then the court should impose "a sentence of seven months, . . . to run concurrently with the three months remaining on the defendant's state sentence." *Id.* The seven-month sentence, adjusted for the 6 months already served, achieves a total punishment of 13 months. *Id.* This example confirms that a district court must first determine the total appropriate punishment—up to the statutory maximum—and then adjust the sentence it imposes to account for time already served on the other sentence. *See id.*

Because section 5G1.3(b) does not affect the guideline range, the authority to vary from the guideline range provides no basis to refuse to adjust a defendant's sentence under that guideline. If the guideline applies, a district court may not refuse to adjust the sentence in order to further the statutory goals of sentencing, *see* 18 U.S.C. § 3553(a). The district court must instead select an appropriate

16

sentence after considering the guideline range and the statutory factors and then adjust the selected sentence to account for time served on the undischarged sentence for relevant conduct.

We are unpersuaded by the contrary decisions of our sister circuits. *See United States v. Carter*, 652 F.3d 894, 896–97 (8th Cir. 2011); *United States v. Armstead*, 552 F.3d 769, 784 (9th Cir. 2008); *United States v. Lane*, 509 F.3d 771, 775–76 (6th Cir. 2007). These circuits reasoned that the refusal to adjust a defendant's sentence under section 5G1.3(b)(1) may amount to a permissible "variance from the guidelines" based on the statutory sentencing factors. *Carter*, 652 F.3d at 897; *accord Armstead*, 552 F.3d at 784; *Lane*, 509 F.3d at 775–76. But a variance from the guidelines refers to "a sentence imposed outside the applicable guideline *range* based upon the statutory sentencing factors found at 18 U.S.C. § 3553(a)." U.S. Sentencing Comm'n, *Primer: Departures and Variances* 1 (Mar. 2020) (emphasis added); *see also, e.g.*, *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1963 (2018); *Pepper*, 562 U.S. at 490; *Irizarry v. United States*, 553 U.S. 708, 715 (2008); *Gall*, 552 U.S. at 51. And as discussed, section 5G1.3(b)(1) does not affect the guideline range. So a refusal to apply that guideline cannot be evaluated as a "variance" from the guideline range.

We acknowledge that our decision in *Gonzalez-Murillo*, 852 F.3d at 1336–37, requires district courts to treat section 5G1.3(b)(1) as lowering a defendant's

17

"guideline range" in one narrow circumstance: sentence-modification proceedings based on an amendment to the Guidelines, 18 U.S.C. § 3582(c)(2). In those proceedings, *Gonzalez-Murillo* held that courts must apply "all eight steps" of section 1B1.1(a)—including any adjustment under section 5G1.3(b)(1)—"to determine the *amended* guideline range" for purposes of a sentence modification. 852 F.3d at 1336 (emphasis added).

The amended guideline range in a sentence-modification proceeding carries a significance that does not attach to the original guideline range. Unlike at sentencing, where the guideline range is advisory, a district court in a sentence-modification proceeding is forbidden to reduce the defendant's sentence beneath "the minimum of the amended guideline range" except in one limited circumstance not relevant here. U.S.S.G. § 1B1.10(b)(2); *see also Dillon v. United States*, 560 U.S. 817, 819 (2010). Because *Gonzalez-Murillo* held that section 5G1.3(b)(1) applies in sentence-modification proceedings—even when it mandates a sentence lower than the guideline range produced by the first seven steps of section 1B1.1(a)—it also had to hold that section 5G1.3(b)(1) lowers the defendant's "*amended* guideline range *for purposes of*" a sentence-modification proceeding. *See* 852 F.3d at 1337, 1340 (emphasis added).

Although we may have doubts about whether *Gonzalez-Murillo* was correct on this point, *see Helm*, 891 F.3d at 743–44, the decision binds district courts to

18

treat section 5G1.3(b)(1) as lowering the amended guideline range that applies in a sentence-modification proceeding. But its holding extends only to the effect of section 5G1.3(b)(1) on "the amended guideline range for purposes of" a sentence-modification proceeding. *Gonzalez-Murillo*, 852 F.3d at 1337. And we cannot extend its holding to the calculation of the original guideline range that applies at sentencing. As discussed, such an extension would be contrary to the text and structure of the Guidelines. It would also contravene *Booker* by making a mandatory guideline govern a defendant's guideline *range*. And it would be inconsistent with our post-*Booker* decision in *Knight*, which held that section 5G1.3(b)(1) is mandatory at sentencing and so necessarily decided that this guideline does not affect the guideline range. *See* 562 F.3d at 1329.

In sum, sentence adjustments under section 5G1.3(b)(1) remain mandatory after *Booker*. An adjustment for time served *reduces* a defendant's sentence instead of enhancing it, so mandatory application of the guideline does not violate the Sixth Amendment. *See Booker*, 543 U.S. at 244. And because this guideline has no impact on the guideline range, mandatory application of the guideline does not violate the remedial holding of *Booker*. Even when this guideline applies, the district court, consistent with *Booker*, remains free to select a sentence above or below the applicable guideline range. But after the district court has selected the appropriate sentence—whether above, below, or within the guideline range—it

19

must adjust that sentence for time served on an undischarged term of imprisonment if the requirements of section 5G1.3(b)(1) are satisfied.

The district court erred by failing to adjust Henry's sentence as section 5G1.3(b)(1) requires. The maximum adjusted sentence the district court could have imposed consistent with section 5G1.3(b)(1) was 96 months of imprisonment—12 months less than the 108-month sentence Henry received. For that reason, we reject the argument that the error was harmless. On remand, the district court should determine whether the requirements of section 5G1.3(b)(1) are satisfied and, if so, adjust Henry's sentence accordingly.

## IV. CONCLUSION

We **VACATE** Henry's sentence and **REMAND** for resentencing.

20